J-S29036-22

2023 PA Super 28

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD KNUPP | : | |
| | : | |
| Appellant | : | No. 1439 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 18, 2021
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0001959-2018

BEFORE: PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED:  February 22, 2023**

Appellant, Donald Knupp, appeals the judgments of sentence that the Washington County Court of Common Pleas imposed after a jury found him guilty of possession of a controlled substance with intent to deliver, knowing or intentional possession of a controlled substance, and possession of drug paraphernalia.[1]  He challenges the trial court's denial of his suppression motion, admission of prior bad acts evidence, and denial of an evidentiary admission objection.  Upon careful review, we *sua sponte* vacate Appellant's concurrent sentence for knowing or intentional possession of a controlled substance and affirm the remaining judgments of sentence without need for a remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-113(a)(32), respectively.

The trial court has offered the following summary of the facts for our review:

The Washington County Drug Taskforce ("WCDT") had been conducting an investigation into [Appellant] (a "target") allegedly trafficking cocaine in the spring in of 2018. Michael Manfredi was a police officer at the time as well as a member of the WCDT. Through the WCDT, he conducted a series of controlled buys of cocaine from [Appellant] at his barbershop.[1] Detective Manfredi used confidential informants (["]CI["]) for the controlled buys.[2] The first controlled buy from [Appellant] took place on June 12, 2018. The CI arranged this purchase by first calling [Appellant] at telephone number [redacted telephone number]. Detective Manfredi testified that he was present for the phone call, he overheard the conversation between [Appellant] and CI, and that he was familiar with [Appellant's] voice at the time. The Detective testified that he has known [Appellant] since 2012.

> [1] [Appellant] cuts hair, but also rents booth space to four persons to cut hair. [Appellant] charges between $25 and $35 per day to these four persons.

> [2] Detective Manfredi testified about the exact protocol using a CI. The WCDT searched the CI to verify that they have no money, weapon, or contraband was [sic] on their person. The WCDT then provided the CI with official funds, and Detective Manfredi recorded the serial numbers of that currency. Additionally, an officer always watched the CI from the time of their body search until they entered the barbershop, as well as the moment the CI exited until the CI traveled to a pre-designated neutral location. The CI was searched at the neutral location. Detective Manfredi or his colleague found the CI to be free of any money and weapons; they were in possession of cocaine they said they received from [Appellant] in exchange for the marked money.

The CI proceeded to [Appellant's] barbershop located at 520 West Chestnut Street, Washington, Pennsylvania to purchase $220 worth of cocaine (3.6 grams). Detective Manfredi orchestrated a second controlled buy on June 14, 2018. For this controlled buy, the CI purchased $1,400 worth of cocaine (29 grams). A third

controlled purchase took place on August 7, 2018 for $220, yielding 3.5 grams of cocaine. The June 14 and August 7 controlled buys were not pre-arranged with a telephone call to [Appellant] like the June 12 buy.

On June 19, 2018, a confidential source informed Detective Michael Manfredi that [Appellant] was going to "re-up" his cocaine inventory that day. The confidential source had previously informed Detective Manfredi that [Appellant's] source of cocaine was a barbershop [in] the Southside neighborhood of Pittsburgh. Consequently, Detective Manfredi contacted the FBI and spoke with Special Agent Piccini to discuss [Appellant] and the investigation and asked for assistance. With this information, [Agent] Piccini drove to East Carson Street to conduct surveillance. [Agent] Piccini observed [Appellant] arriving at a barbershop and photographed him walking into the shop carrying a dark colored backpack.

[Detective] Manfredi and Officer Martin of the City of Washington Police Department were waiting near [Appellant's] barbershop, located at 520 West Chestnut Street, Washington, to return from Pittsburgh in a blue Dodge Ram pickup truck.[3] When [Appellant] arrived at his barbershop in the blue pick-up truck, Officer Martin and Detective Manfredi exited their vehicles and approached [Appellant's] truck. According to Detective Manfredi, he noticed a small amount of marijuana in the truck. He asked for [Appellant's] consent to search the vehicle, which [Appellant] provided. Therein, a blue backpack was located with $10,000 therein, 6 Washington Financial Bank deposit receipts, and remnants of a marijuana cigarette.

> [3] Detective Manfredi testified he knew that this was [Appellant's] vehicle.

Detective Manfredi called [Pennsylvania State Police] Trooper Christine Marth, the K-9 narcotic detection handler, for assistance. Trooper Marth testified that she had her canine, Brutus, sniff for cocaine located inside [Appellant's] truck. [Trooper Marth testified that] Brutus did not alert for any cocaine inside [Appellant's] truck, but that her canine did alert on the $10,000 found in [Appellant's] backpack, and $500 in his wallet.[4] Importantly, $1,150 (initially testified to being $920 by mistake) of the $10,000 in backpack was money used in the controlled purchase of cocaine via a confidential information (CI) from

[Appellant] at his barbershop. Additionally, the WCDT seized a cellular telephone with the phone number [redacted telephone number]. Detective Manfredi testified that this phone number was the number the CI dialed on June 12, 2018 to arrange the cocaine purchase, and that he was present when the call was made for verification.[5]

> [4] According to Trooper Marth, the money was placed into an envelope. Other similar looking envelopes were filed with items free of contraband and placed on the ground next to the envelope with the $10,500 inside. Trooper Marth then conducted her canine search.

> [5] Detective Manfredi testified that he overheard the conversation between [Appellant] and CI, and that he was familiar with [Appellant's] voice at the time. The Detective testified that he has known [Appellant] since 2012.

[Appellant] testified that he intended to use this money for purchasing a motorcycle that he was to see in Pittsburgh, and that his mother, Vicki Knupp, gave him one-half of the $10,000 for the motorcycle.[6] According to [Appellant], the owner of the motorcycle cancelled [Appellant's] appointment at the last minute. [Appellant], therefore, decided to get a haircut on the South Side, then return to his barbershop because he had an appointment.[7]

> [6] Mrs. Knupp testified similarly.

> [7] The Commonwealth did not arrest, nor charge, [Appellant] after their search on June 19, 2018 stop [sic].

Detective Manfredi drafted search warrants of [Appellant's] two bank accounts at Washington Financial Bank (one checking, one savings) and search warrants of [Appellant's] barbershop, his apartment directly above the barbershop, and Vicki Knupp's house as a consequence of aforementioned facts.[8] Judge Valarie Costanzo approved the warrant request on August 8, 2018, and they were executed on the same date. The search of the barbershop yielded 190 grams of cocaine located in a black bag sandwiched under white plastic bags on top of a washer/dryer unit in a storage room marked "Employees Only." The bag also contained a Crown Royal bag, wherein the WCDT found a black digital scale and spoon, both of which were covered in a white

powder. Furthermore, there were three separately wrapped plastic bags containing a white powder-like substance; two of the three bags were in one larger bag. The WCDT also found $3,900 on/in a safe in [Appellant's] apartment, as well as $870 in a blue banking bag on a shelf in the barbershop storage room. Finally, the WCDT found marijuana blunts in the barbershop as well as a box of plastic sandwich bags, $1,100 in [Appellant's] apartment closet, $187 from [Appellant's] wallet, $18 in a cigar box from the apartment, $41 in the barbershop cash register, handgun ammunition, three cellular telephones and one tablet. The WCDT seized all of these items.

> [8] Vicki Knupp is on [Appellant's] two bank accounts, and [Appellant] lists 246 East Prospect Avenue, Washington Pennsylvania as his residence with the Department of Motor [V]ehicles. Detective Manfredi learn[ed] of this address during the June 19, 2018 traffic stop. This address is where Vicki Knupp resides.

Trial Court Opinion, 1/5/22, 1-4 (record citations omitted).

We note, in addition to the offered summary, that Detective Manfredi alleged in his trial testimony that Appellant made inculpatory statements after a *Miranda*[2] warning in he which stated that he had bought 4.5 ounces of cocaine from a person named Cook at a bar in Pittsburgh and that "there may be a little bit left over from a previous cocaine purchase that was within the barbershop." N.T. 3/23/21, 149, 196-97. Moreover, the police determined that sixty dollars of the money that was recovered from Appellant's wallet at the time of the search warrant execution was buy money from the controlled cocaine purchase that was completed on August 7th. *Id.* at 174-75.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Commonwealth filed a criminal complaint on August 9, 2018. Appellant retained Gary E. Gerson, Esquire, as his counsel who continued to represent him until prior to the filing of his post-sentence motions. Praecipe of Appearance, 7/28/21; Praecipe for Appearance, 9/26/18.

Relevant to the first claim presented in this appeal, Appellant filed a pre-trial motion to suppress the evidence recovered as a result of the car stop. Appellant's Omnibus Pre-trial Motion, 3/29/19, 4-7. Because he alleged that he was illegally stopped and that his truck and backpack were thus illegally searched, he asserted that the search warrants issued based on the evidence obtained from the car stop were illegally issued. *Id.* at 4-10. He objected to the legality of the stop because of, *inter alia*, the lack of specificity for the tip concerning him traveling to Pittsburgh for a resupply of cocaine and the supposed lack of evidence concerning the reliability of the police confidential source for that tip. *Id.* at 4-5; Brief in Support of Suppression, 8/1/19, 1-6. He also alleged that the search of his backpack in his truck exceeded his consent to a search. Appellant's Omnibus Pre-trial Motion, 3/29/19, 6-7; Brief in Support of Suppression, 8/1/19, 6-7. After a hearing on August 1, 2019, the trial court denied the motion in a deferred order. Order, 8/19/19, 1-7. The court found that there were sufficient facts to support reasonable suspicion for the detainment of Appellant, probable cause to permit the search of his truck, and probable cause for the issuance of the search warrants. *Id.* at 3-6.

Prior to trial, the Commonwealth filed a motion in limine seeking admission of, *inter alia*, evidence of the controlled purchases of cocaine from Appellant's barbershop prior to the execution of the search warrants. Commonwealth's Motion in Limine, 3/11/21, ¶¶ 2-3. The Commonwealth requested the court to admit that evidence pursuant to Pa.R.E. 404(b) to prove, among other things, Appellant's intent to deliver controlled substances. *Id.* at ¶¶ 10-18. The court granted the request in part, permitting the admission of evidence concerning the sales conducted with prerecorded buy money involved with the issuance of the search warrants. Order, 3/18/21, 1 ("To the extent that the prior bad acts are related to a confidential informant's purchase of contraband from [Appellant] with Commonwealth earmarked funds, and said funds were directly related to the issuance of a search warrant and leading to his arrest regarding charges herein, the Commonwealth may present testimony about those transactions at trial."). The court noted that that evidence was admissible as *res gestae* and evidence of Appellant's intent to deliver controlled substances. *Id.* at 2-5. This ruling is the focus of Appellant's second claim herein.

Appellant proceeded to be tried before a jury on March 23-25, 2021, and was found guilty of the above-referenced charges. Verdict Slip, 3/25/21, 1; Verdict, 3/25/21, 1-2. During trial, Appellant raised an objection to the admission of ammunition and a firearm magazine recovered by the police, the denial of which is the focus of his third claim herein. N.T. 3/23/21, 187-89.

At a deferred sentencing hearing, the trial court imposed concurrent imprisonment terms of eighty to one hundred and sixty months for possession of a controlled substance with intent to deliver, six to twelve months for knowing or intentional possession of a controlled substance, and one to two months for possession of drug paraphernalia. Sentencing Order, 6/18/21, 1-2. The court thereafter denied post-sentence motions in which Appellant asserted that the Commonwealth did not formally arraign him, and trial counsel provided ineffective assistance by failing to inform him of the prior sentencing ranges for his charges.[3] Order, 10/25/21, 1-3; Post-Sentence Motions, 10/12/21, 1-2. Appellant timely filed a counseled notice of appeal.[4] Notice of Appeal, 11/24/21, 1.

Appellant presents the following questions for our review:

---

[3] The post-sentence motions were timely filed following the grant of three extensions of time. Order, 6/24/21, 1; Order, 8/3/21, 1; Order, 8/31/21, 1. The deadline resulting from the last extension grant was identified by the trial court as Sunday, October 11, 2021, but, pursuant to the computation of time rule, that deadline must be properly calculated as Monday, October 12, 2021. **See** 1 Pa.C.S. § 1908 ("[w]hever the last day of any [period of time … is referred to in any statute] shall fall on a Saturday or a Sunday … such day shall be omitted from the computation.").

[4] In his notice of appeal, Appellant asserted that he is appealing both the sentencing order, dated June 18, 2021, and the order denying his post-sentence motions, dated October 25, 2021. Notice of Appeal, 11/24/21, 1. This appeal, however, properly lies only from the imposed judgments of sentence. We have amended the caption accordingly. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.").

I.   Did the trial court err in the denial of the motion to suppress on August 19, 2019?

II.  Did the trial court err in the admission of prior bad acts of the Appellant on March 18, 2021?

III. Did the trial court err in overruling the Appellant's objection to the admission of evidence involving a firearm during trial on March 23, 2021?

Appellant's Brief at 5 (original text in all caps).

In his first issue, Appellant challenges the denial of his suppression motion claiming that the trial court erred by concluding that there was reasonable suspicion permitting the car stop on June 19, 2018, and probable cause based on the evidence obtained during the search of his truck that permitted any of the subsequent searches in this case. Appellant's Brief at 21-25. "Once a motion to suppress has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-48 (Pa. 2012), **citing, inter alia,** Pa.R.Crim.P. 581(H).

In reviewing an appeal from the denial of a motion to suppress evidence, we are guided by the following standard of review:

> Our standard of review in addressing a challenge to trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the

- 9 -

suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (citation omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Appellant first asserts that there was insufficient evidence for reasonable suspicion for the car stop because the confidential informant's tip that he was going to "re-up" on cocaine in Pittsburgh on June 19, 2018, lacked specificity. He states, "There was no specific location given, nor was there any additional information given that would be predictive of the Appellant's behavior or would narrow down the potential occurrences that could be the case given the wide scope of variables involved." Appellant's Brief at 23. He then argues that the trial court erred by ruling that the odor of marijuana coming from his truck provided probable cause by itself. *Id.* at 24. Lastly, he asserts that the evidence obtained as a result of his consent to a search of his truck should have been suppressed as the fruits of an illegal seizure. *Id.* at 25.

To conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012). "In reviewing whether reasonable suspicion … exists, we

must … examine the totality of the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual [] of criminal activity." **Commonwealth v. Epps**, 608 A.2d 1095, 1096 (Pa. Super. 1992). Even innocent factors, viewed together, may arouse suspicion that criminal activity is afoot. **Commonwealth v. Cook**, 735 A.2d 673, 676 (Pa. 1999); **see also Commonwealth v. Riley**, 715 A.2d 1131, 1135 (Pa. Super. 1998) ("[A] combination of circumstances, none of which taken alone would justify a stop, may be sufficient to achieve a reasonable suspicion."). Moreover, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to specific reasonable inferences he is entitled to draw from the facts in light of his experience." **Terry v. Ohio**, 392 U.S. 1, 27 (1968) (internal quotation marks and citation omitted).

Here, the suppression court determined that there was ample support for reasonable suspicion based on the totality of the circumstances:

> According to [Detective] Manfredi's testimony the confidential source had previously provided information to the Washington County Taskforce regarding criminal investigations and had determined that such information was accurate. [Detective] Manfredi also stated that the taskforce used the confidential source to purchase cocaine from [Appellant] in "controlled buy situations." In fact, prior to June 19, 2018, [Detective] Manfredi and his colleagues had conducted seven controlled purchases of cocaine from [Appellant] with the assistance of confidential informants. Further, Special Agent Piccini informed [Detective] Manfredi that "Tending Styles" [(the barbershop in Pittsburgh that Appellant traveled to on June 19, 2018)] was [] known to them to be a source of cocaine distribution. Pursuant to a totality-of-the-

circumstances standard, this Court concludes that the informant's reliability and basis of knowledge passes constitutional muster. …

[T]his Court finds that the above facts were sufficient to sustain a finding of reasonable suspicion that [Appellant] had just purchased cocaine at "Trending Styles." Therefore, the police could detain [Appellant].

Order, 8/19/19, 3-4 (record citation and footnote omitted).

Appellant's argument – contrary to the suppression court's analysis – overlooks the mandate that "reasonable suspicion must be evaluated based on the *totality* of the circumstances." *In re D.M.*, 727 A.2d 556, 559 (Pa. 1999) (emphasis in original). The fact that the "re up" tip did not include a specific destination and that Appellant's actions could have appeared to be innocent or lawful in a vacuum did not countermand the adequate grounds for reasonable suspicion. Prior to the car stop, the police had conducted at least seven controlled purchases of cocaine from Appellant's barbershop from March to June 2018, with at least three of those transactions occurring during the month that the car stop took place. N.T. 8/1/19, 12, 22, 46, 57; Application in Support of Search Warrant for Application for Search Warrant 726-2018, 8/9/18, ¶¶ 4, 9-16. Moreover, while the "re up" tip regarding a purchase in Pittsburgh did not include a specific destination, the police surveilled Appellant going to a location in Pittsburgh that they knew was a source for cocaine distribution just prior to the car stop occurring when Appellant returned to his barbershop. N.T. 8/1/19, 12-21, 33-35, 52.

When these facts are considered together, they demonstrated a likelihood that Appellant was engaged in criminal activity and had been in the process of resupplying cocaine that the police had reason to believe he was selling from his barbershop. The confidential source about the "re up" tip was not an anonymous source and the fact that Appellant went to Pittsburgh, to a location that the police had been aware was a source for cocaine distribution, when the informant said that Appellant would be going to Pittsburgh for a resupply of cocaine, following the multiple controlled purchases at Appellant's barbershop, appeared to corroborate the tip and gave rise to reasonable suspicion sufficient to warrant an investigative detention. **See Commonwealth v. Moore**, 805 A.2d 616, 619-20 (Pa. Super. 2002) ("In establishing reasonable suspicion, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate.") (internal quotation marks omitted), **citing Terry**, 392 U.S. at 21-22; **see also Commonwealth v. Lohr**, 715 A.2d 459, 462 (Pa. Super. 1998) ("a tip from an informer known to the police may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so.").

To the extent that Appellant challenges whether the odor of marijuana provided insufficient grounds for probable cause, the presence of that odor is a red herring for purposes of our review. Appellant was not stopped or

searched on account of marijuana. The police embarked on conducting the stop without any knowledge of the presence of marijuana because they believed, based on the above-discussed facts, that Appellant had just engaged in a resupply of cocaine. **See** N.T. 8/1/19, 48 (Detective Manfredi's suppression hearing testimony: "Q. And when -- the purpose for you approaching that vehicle was to determine and to seize cocaine that you believe was involved in a transaction at the Trending Styles barbershop; correct? A. That was what we believed was transpiring, correct."). After Appellant was lawfully subjected to an investigative detention, he then consented to a search of his truck. **See id.** at 25 ("And he said there was nothing in his truck except for a couple of blunts. And he said he didn't feel that that was illegal. I think the quote was, 'There's nothing illegal in there. Go ahead and search it.'"); **see also id.** at 49-50.

While the suppression court acknowledged in its denial order that a marijuana odor by itself provided probable cause under caselaw that has now been abrogated, that observation is immaterial where Appellant ultimately granted consent to a search of his truck which he does not even challenge in this appeal. Order, 8/19/19, 4, **citing Commonwealth v. Stoner**, 344 A.2d 633, 635 (Pa. Super. 1975) (holding the smell of marijuana provides probable cause to search), **abrogated by Commonwealth v. Barr**, 240 A.3d 1263, 1283-88 (Pa. Super. 2020) (holding that the odor of marijuana emanating from a vehicle during a police traffic stop, alone, is not sufficient to establish probable cause), and **Commonwealth v. Barr**, 266 A.3d 25, 43 (Pa. 2021)

- 14 -

(marijuana alone is insufficient to support a finding of probable cause but could be considered with other articulable facts that would support a finding of probable cause under the totality of the circumstances). "If a person has a reasonable expectation of privacy in a place, then [the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution] generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate." *Barr*, 266 A.3d at 39-40. One exception to the warrant requirement exists when a person with authority over the place to be searched voluntarily consents to the search. *Commonwealth v. Alexander*, 243 A.3d 177, 193 (Pa. 2020) (stating, "[a] citizen is free to put law enforcement to the test by requiring a warrant, and if the citizen wishes to give up that right they can simply consent").

While a showing of probable cause was necessary for the issuance of a search warrant and the existence of probable cause and exigent circumstances was necessary to justify a warrantless search of an automobile under *Alexander*, *supra*, Appellant relieved the Commonwealth of any burden to show probable cause for the issuance of a search warrant or probable cause and exigent circumstances for a warrantless automobile search by consenting to a search. On appeal, Appellant offers no evidence or arguments to contravene the existence or voluntariness of that consent. He notes that "[t]his consent was given while [he] was in the back of the police car," but even a suspect who has been detained and handcuffed may still voluntarily

consent to a search. *See Commonwealth v. Rosas*, 875 A.2d 341, 350 (Pa. Super. 2005) ("although Rosas was handcuffed in the presence of the troopers, this fact is simply insufficient to create a presumption of lack of voluntariness in his consent to the search").

In the absence of any apparent challenge to his consent to a search, we cannot find that the suppression court erred by not concluding that the evidence seized from his truck was obtained as a result of an illegal search. We are bound by the facts found by the suppression court, including that he voluntarily consented to a search of his truck. Following the consent granted, the police were permitted to search Appellant's truck and his backpack contained therein which held a large sum of money that, in addition to other evidence, supported the affidavits of probable cause for the search warrants later issued in this case. *See Commonwealth v. Randolph*, 151 A.3d 170, 185 (Pa. Super. 2016) ("[G]eneral consent to search a vehicle extends to closed, but readily opened, containers discovered inside the car.") (citation omitted).

We find no basis to conclude that the trial court erred by denying Appellant's suppression motion. There were articulable grounds for reasonable suspicion justifying the car stop in this case and, during that lawful stop, Appellant granted the police consent to search his truck which yielded evidence that was permissibly used by the Commonwealth to subsequently obtain search warrants for additional evidence. To the extent that the suppression court made any legal conclusions about the presence of an odor

of marijuana coming from Appellant's truck, we are not bound by those conclusions, and they played no part in our review of the denial of the suppression motion. *See Commonwealth v. Cartagena*, 63 A.3d 294, 301 (Pa. Super. 2013) (*en banc*) ("the law is well settled that if the record supports the result reached by the suppression court, we may affirm on any ground.").

In his second issue, Appellant challenges the trial court's partial grant of the Commonwealth's motion in limine that allowed the admission of evidence concerning the controlled drug sales which involved the use of prerecorded buy money that was later recovered by the police. Appellant's Brief at 25-28. He claims that evidence admitted by this ruling "was more prejudicial than probative and was used for improper purposes under Pennsylvania Rules of Evidence 404(b)." *Id.* at 26.

As an initial matter, Appellant's brief fails to indicate where in the record he preserved his claim regarding the Commonwealth's motion in limine pursuant to either the "other crimes, wrongs, or acts" section of Pa.R.E. 404(b) or the exclusionary provision in Pa.R.E. 403. Nothing in the record suggests that he filed a response to the Commonwealth's motion. Moreover, he has not moved into the certified record any notes of testimony reflecting the arguments the parties offered at any hearing on the Commonwealth's motion. Accordingly, Appellant has failed to satisfy his duty to demonstrate the preservation of this claim. Pa.R.A.P. 2117(c) (requiring, where an issue is not reviewable on appeal unless raised or preserved below, a statement of place of raising or preservation of issues); Pa.R.A.P. 2119(e) ("Where under

- 17 -

the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereof as required by Pa.R.A.P. 2117(c), or substantially the same information."). Having failed to identify the preservation of his instant claim in the record, this Court is constrained to find that Appellant waived his arguments concerning the second issue presented herein. ***See Young v. S.B. Conrad, Inc.***, 216 A.3d 267, 274 (Pa. Super. 2019) ("Our appellate courts have long held that an [appellant] who does not follow Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e) waived the related issues due to the defects in his brief."); ***Commonwealth v. Baker***, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) ("[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review."); ***see also*** Pa.R.E. 103(a)(1)(A)-(B) (explaining that a party may claim error in a ruling to admit … evidence only if a party "makes a timely objection, motion to strike or motion *in limine*; and … states the specific ground, unless it was apparent from the context"); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if Appellant preserved his theories for this issue, we would not conclude that the trial court erred by concluding that the evidence at trial concerning the three controlled drug sales during the investigation of

Appellant were admissible under Rule 404(b), and should not have been excluded under Rule 403.[5]  Pursuant to Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Under a separate subpart of the rule, however, evidence of that nature may be permitted for other uses such as proving, among other things, intent and identity, so long as "the probative value of the evidence outweighs its potential for unfair prejudice."  Pa.R.E. 404(b)(2).  In addition, the list of exceptions in Rule 404(b)(2) is not exclusive, and our Supreme Court previously recognized another exception to Rule 404(b)'s general prohibition of other "prior bad acts" evidence, referred to as the *res gestae* exception.  *See Commonwealth v. Lark*, 543 A.2d 491 (Pa. 1988).  Pursuant to *Lark*, evidence of other crimes and acts is admissible to enable the Commonwealth to tell the "complete [ ] story of the crime" by "providing its immediate context of happenings near in time and place."  *Id.* at 497, quoting, *inter alia*, McCormick on Evidence § 190 (2d ed. 1972).

Here, the trial court admitted only evidence concerning the three controlled drug purchases which involved prerecorded buy money that was

---

[5] As an aside we note that Appellant's claim addresses the trial court's admission of evidence of his "cell phone messages, prior controlled buys, and money found during the searches of [his] property."  Appellant's Brief at 25-26.  To the extent that Appellant addresses "cell phone messages," we are unclear as to what evidence he is referring to and he fails to cite any instance of cellular telephone messages being addressed at his trial.  Our thorough review of the record for this appeal fails to uncover any moment that text or voice mail messages were discussed at trial.

later recovered by the police during their investigation and were related to the issuance of the search warrants in this case. Order, 3/18/21, 1. The court allowed this evidence under the *res gestae* exception and for the additional purposes of allowing this evidence to be used for the purposes of determining Appellant's identity as the possessor of the recovered cocaine supply and his intent to deliver it. **Id.** at 3-5; **see also** N.T. 3/25/21, 87-88 (jury instruction regarding the use of the controlled purchase evidence).[6] We disagree with Appellant's assertions that this evidence was admitted for improper purposes or that its probative value was outweighed by its potential for unfair prejudice.

_____

[6] The jury was instructed as follows concerning the controlled purchases evidence:

> Further, each element must be proved by beyond a reasonable doubt. But before I give you that information, ladies and gentlemen, I must give to you a cautionary instruction. Okay? You have heard evidence intending to prove that the defendant was involved in controlled buys of cocaine, for which he is not on trial here. I am speaking of the testimony to the effect that alleged sales of cocaine took place on June 12, 2018, June 15, 2018, and August 7th of 2018, by Mr. Knupp.

> This evidence is before you for a limited purpose. That is for the purpose of intending to show his possession of and intention to deliver cocaine that was seized on August the 9th of 2018. This evidence must not be considered by you in any other manner or for the purposes I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies, from which you might be inclined to infer guilt. Please remember this, ladies and gentlemen.

N.T. 3/25/21, 87-88.

Like the trial court, we conclude that the three controlled drug sales that were addressed at trial were relevant to present the history of the case to the jury and its probative value outweighed the prejudice it may have caused Appellant. *See Commonwealth v. Serge*, 837 A.2d 1255, 1261 (Pa. Super. 1999) (stating that all Commonwealth evidence in a criminal proceeding is generally prejudicial to the defendant, but relevant evidence is to be excluded only when it is unfairly prejudicial); *see also id.* ("[A] trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.") (citation omitted); *see also Commonwealth v. Tyson*, 119 A.3d 353, 359 (Pa. 2015) (unfair prejudice means "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing evidence impartially").

The controlled purchases admitted at trial were relevant to establish the history and natural development of the facts. They formed an integral part of the criminal investigation because they provided the evidentiary basis for the car stop of Appellant and the police referred to them in the affidavits of probable cause for the search warrants for Appellant's barbershop and his banking recordings. Evidence of these purchases informed the jury about the course of the investigation that resulted in Appellant's arrest and thus were properly admitted under the *res gestae* exception to the general prohibition on admitting prior bad acts evidence. *See Commonwealth v. Dillon*, 925

A.2d 131, 139 (Pa. 2007) (*res gestae* evidence admitted to explain events surrounding criminal conduct so that the case presented to a jury did not appear in a vacuum).

This evidence was also relevant and admissible under Rule 404(b)(2) for the purpose of establishing that Appellant had possession of the cocaine stash recovered from his barbershop and the intent to deliver it, and thus counter his defense which suggested that other employees or patrons in the barbershop had conducted the controlled drug sales and caused him to be in possession of some of the recovered buy money. *See Commonwealth v. Echevarria*, 575 A.2d 620, 623 (Pa. Super. 1990) (evidence that informant purchased cocaine from Echevarria on two occasions shortly before Echevarria's arrest for third sale was relevant to charge of possession of cocaine with intent to deliver). Moreover, the evidence was admissible under Rule 404(b) where the controlled buys were closely linked temporally, in the days prior to the car stop and within an overall period of time of less than sixty days prior to the search warrant executions, and geographically, where the evidence suggested that Appellant's barbershop was being used as a site for drug sales. *See Commonwealth v. Kinard*, 95 A.3d 279, 286 (Pa. Super. 2014) (*en banc*) (holding that the trial court properly exercised its discretion in admitting evidence of Kinard's subsequent bad acts, *i.e.*, inculpatory prison phone calls discussing ongoing drug transactions, where the probative value of the calls, though "highly prejudicial," "outweighed the potential for prejudice in that it was circumstantial evidence of appellant's intent, proof of

his motive, and identity as the actor in the [prior] PWID charge."); *see also* *Commonwealth v. Clayton*, 483 A.2d 1345, 1349 (Pa. 1984) (admitting subsequent bad act evidence of a shooting where the offenses were substantially similar, and stating that "the time span of four months between the two incidents [does not] render this evidence inadmissible in view of the numerous similarities between the incidents.").

Although the prior bad act evidence was certainly prejudicial, the prejudice was ameliorated by a cautionary instruction that the trial court issued to the jury, *see* N.T. 3/25/21, 87-88, explaining the limited purposes for which it could consider the evidence. *See Echevarria*, 575 A.2d at 623-24 (holding that any possible prejudicial effect of testimony concerning prior controlled drug sales was cured by an instruction to a jury advising that that evidence should only be used for determining Echevarria's possession of a controlled substance and his intent to deliver it); *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016) (stating that "[i]t is well settled that the jury is presumed to follow the trial court's instructions[.]"). The use of the limiting instruction, along with the initial limitation that only evidence concerning the recovered controlled buy money would be admitted, leads us to the conclusion that Appellant was not unfairly prejudiced by the partial grant of the Commonwealth's motion in *limine* and the trial court did not abuse its discretion by admitting the evidence of the three controlled drug sales.

In his last issue, Appellant alleges that the trial court erred by overruling his objection to the admission of evidence concerning the recovery of

ammunition and a firearms magazine.[7]  Appellant's Brief at 29-31.  He argues that the ammunition and magazine evidence held no probative value where he was not charged with firearms offenses, and an attempt by the Commonwealth to link evidence related to firearms to drug trafficking caused him "undue prejudice." *Id.*

During his direct examination, Detective Manfredi testified, without any objection, that the recovered evidence included, among other things, ammunition, which was two boxes of 40-caliber Smith & Wesson brand and two boxes of 270 Winchester brand, and a firearm magazine.  N.T. 3/23/21, 180.  The detective separately listed the various recovered items and identified the recovered ammunition and magazine as "item number 12." *Id.* The prosecutor then proceeded to present the various recovered items to the detective and marked and moved them into the evidentiary record as trial exhibits.  *Id.* 180-87.  When the prosecutor addressed the ammunition evidence, the detective again identified it without any objection.  *Id.* at 187. When the prosecutor asked the detective to open the exhibit and show the ammunition to the jury, Appellant's counsel raised the objection that is the focus of this claim after the detective identified the ammunition for a third time.  *Id.* at 187-88.

_____

[7] Appellant refers to "evidence involving firearms" as the focus of his claim but no firearms were recovered in this case.  Appellant's Brief at 29.  He cites the responses to his objection to the admission of the recovered ammunition and magazine in the discussion of his claim.  *Id.* at 29 nn. 27-28.  Accordingly, for the sake of clarity, we will refer to the evidence of the recovered ammunition and magazine as the proper focus of the claim.

The relevant passage of the notes of testimony encompassing the ruling on the objection included the following:

Q.      I'm going to hand you Commonwealth's Exhibit 64.

A.      This is Commonwealth Exhibit 64, marked on this. This has all of the consistent case number, Donald Knupp, date, time, and location. This says, "Item 12 ammunition; 40 S&W, two boxes; 270 Win, two boxes; and a 40 cal magazine," as it's marked on this evidence tag and fairly consistent with Item 12 on Mr. Knupp's inventory receipt of seized property.

Q.      If you could briefly open that up and show the jury the ammunition.

A.      I'm not being nice anymore. I will just start setting them here. So this is a -- here is a box of 40 Smith & Wesson ammunition. They are bullets within, full metal jacket bullets. This is a box of 270 Win, 270 Winchester bullets, a box, and within are spent brass shell casings and live and live bullet ammunition.

[Defense counsel]:  Your Honor, I would object to this evidence. Mr. Knupp is not --

[Prosecutor]:  Then we'll approach.

[Defense counsel]:  He's not sure --

[Prosecutor]:  Your Honor --

The Court:  Yes. Please come up.

(Whereupon, a sidebar was held.)

[Defense counsel]:  I would just object to this evidence in particular. He is not charged with any firearms violations. It's not dispositive. It's not even probative here. It's just prejudicial. We got a lot of evidence in here already, and I don't know why we have to take the time on this ammunition.

[Prosecutor]:  Well, Your Honor, I mean, these are all evidence that was seized from the becomes [sic]. We admitted a lot of

evidence that he is not necessarily charged with. We didn't charge him with the marijuana. It was admitted today. It is everything that is seized and confirms the inventory.

The Court: I understand that. [Defense counsel], I don't think is disputing that. But what is the relevance to the actual crime charged?

[Prosecutor]: Because the search was conducted certain items were seized by officers. This officer indicated, and later an officer is going to testify that later individuals who are dealing in drugs have firearms and ammunition and things of that nature. And that's part of this case.

[Defense counsel]: I don't see how it's probative at all to anything here.

[Prosecutor]: That's not the point.

The Court: Okay. To the extent that [the prosecutor] says that she will have some expert testimony with respect to that matter, then the Commonwealth is permitted. I will allow it.

[Defense counsel]: Note my objection please.

The Court: Your objection is noted.

N.T. 3/23/21, 187-89.

The Commonwealth's expert witness later testified that firearms were among the items he expected to find when executing search warrants in drug investigations:

A. Well, obviously, narcotics. We look for large quantities of United States currency, communication devices, packaging material, cut agents, firearms. Because it's a cash business, it's a cutthroat business, drug dealers rub off on one another. And people know that a person has large amounts of cash, wants to rob them and take their cash. So a lot of times, narcotics dealers possess firearms. So we always look for firearms in these searches....

N.T. 3/24/21, 90. The expert subsequently addressed the recovered ammunition in his discussion as to the things he examined while forming his opinion as to Appellant's intent to deliver the recovered cocaine. *Id.* at 93-94 ("We also, which I didn't -- we found ammunition. However, we didn't find any firearms, and that would be indicative of possible firearm presence for the purpose of protecting the narcotics.").

The trial court advises us that it found the ammunition evidence was relevant to the drug charges at issue and was not so prejudicial that it needed to be excluded from trial:

> Based upon th[e expert] testimony, the trial court is unable to conclude that the prejudicial value of testimony regarding ammunition located in [Appellant's] apartment outweighed its probative value. This Court finds the firearm evidence to be relevant because the ammunition taken in conjuncture with the drug charges that have been filed against [Appellant]. Law enforcement's expertise and experience has taught them that ammunition, and firearms, are associated with illicit drug trafficking.

Trial Court Opinion, 1/4/22, 7.

First, we are presented with the question of whether the evidence concerning the ammunition and magazine was relevant where Appellant was facing charges only involving the possession of controlled substances and drug paraphernalia, and was not being tried for any firearms offenses. Appellant's Brief at 29-30. Pa.R.E. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without

the evidence; and (b) the fact is of consequence in determining the action." "Evidence that is not relevant is not admissible." Pa.R.E. 402.

Here, all the facts and circumstances surrounding Appellant's possession of the recovered drugs were relevant to determine whether he had the intent to deliver those drugs. *In re R.N.*, 951 A.2d 363, 367 (Pa. Super. 2008). On sufficiency review, our appellate courts have considered the presence of a firearm as a relevant factor for consideration of a drug possessor's intent to deliver. *See Commonwealth v. Ratsamy*, 934 A.2d 1233, 1238 (Pa. 2007); *In re R.N.*, 951 A.2d at 367. We have additionally treated the presence of ammunition as a relevant consideration for determination of that intent element. *See Commonwealth v. Watley*, 81 A.3d 108, 115 (Pa. Super. 2013) (*en banc*) (observing that the determination of whether a person possesses a drug with intent to deliver is based upon the totality of circumstances, including whether police found firearms and ammunition in close proximity to drugs).

Our treatment of firearms and ammunition during sufficiency review for charges of possession of controlled substances with intent to deliver naturally leads to the conclusion that the ammunition evidence in the instant case was relevant for admissibility purposes. This conclusion is consistent with the theory addressed in the Commonwealth's proffered expert testimony: if one stores firearms and ammunition in close proximity to drugs, it makes it more probable that the drugs were possessed with the intent for sale because the firearms and ammunition may be used for, among other things, protecting the

illicit stash of contraband and the proceeds grossed from their sale, which in most cases will be sums of cash. Because the presence of the ammunition and the magazine and their proximity to the recovered drugs were proper considerations for the trier of fact to determine Appellant's intent to deliver, we reject Appellant's assertion that that evidence was irrelevant.

In the alternative, Appellant argues that the evidence of the ammunition and the magazine caused him "undue prejudice" and should have been excluded pursuant to Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of … unfair prejudice."). Appellant's Brief at 29-31. "Unfair prejudice," in the context of applying Rule 403, means "a tendency to suggest decision on an improper basis to divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Kane*, 188 A.3d 1217, 1228 (Pa. Super. 2018) (citation omitted); *see also* Pa.R.E. 403, cmt. Evidence "will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision upon something other than the legal propositions relevant to the case." *Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (citation omitted; brackets in original).

Appellant argues that the evidence concerning the ammunition and the magazine "served no purpose other than to inflame the jury against" him, that "[t]he mere suggestion that the presence of firearms indicates drugs trafficking is inflammatory," and that the Commonwealth's expert testimony

"misled the jury into placing significant weight on evidence involving [non-existent] firearms." Appellant's Brief at 30-31. We are unable to agree with Appellant's assertions. His first two points are contradicted by our relevancy analysis. The last point is contradicted by the record. The recovered ammunition and magazine were not a focal point of the Commonwealth's case-in-chief. That evidence was only briefly addressed in Detective Manfredi's testimony identifying the items recovered from Appellant's barbershop and apartment, and the importance or relevance of that evidence or firearms in general were only addressed in the above-cited portions of the Commonwealth's expert testimony. N.T. 3/23/21, 180, 187, 189-90; N.T. 3/24/21, 90, 93-94. The expert's suggestions that the presence of firearms was a relevant consideration for determining Appellant's intent to traffic and that the presence of ammunition was "indicative of possible firearm presence" were not misleading and did not appear to serve the purpose of inflaming the jury or persuading them to disregard any legal proposition. In these contexts, we do not agree that the probative value of the ammunition evidence was outweighed by the danger of unfair prejudice or that the trial court abused its discretion by admitting the evidence concerning the ammunition and the magazine.

We would be remiss if we concluded our review without addressing the fact that Appellant's sentence contains an obvious defect rendering it illegal. Because there is no apparent issue with our jurisdiction for this appeal, we may address the legality of Appellant's sentence *sua sponte*. ***See***

*Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013) ("As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable and the court can even raise and address it *sua sponte*."); *see also Commonwealth v. Alston*, 212 A.3d 526, 528 (Pa. Super. 2019) ("A challenge to the legality of sentence is a question of law; our standard of review is *de novo* and our scope of review is plenary.").

The bills of information make it clear that Appellant's drug possession charges only involved his possession of cocaine. Bills of Information, 9/17/18, 1. While the trial evidence referenced the separate recovery of quantities of cocaine, marijuana, and pills, *see* N.T. 3/23/21, 179-80 (referring to items 1, 11, and 12), the Commonwealth only proceeded to a verdict on the drug charges based on Appellant's possession of the cocaine seized on August 9, 2019. N.T. 3/25/21, 88 (trial court's jury instructions: "… Mr. Knupp is charged with possession of a controlled substance, that being cocaine. He is also charged with the intent to deliver a controlled substance, that being cocaine as well."). At sentencing, however, the trial court imposed concurrent imprisonment terms for both drug possession charges. Sentencing Order, 6/18/21, 1.

Whether convictions merge for sentencing purposes is a question implicating the legality of a sentence. *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009). Our sentencing merger statute at 42 Pa.C.S. § 9765 prohibits merger unless two distinct facts are present: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the

offenses are included in the statutory elements of the other. Here, it is obvious that, for sentencing purposes, Appellant's possession of cocaine conviction should have merged with his possession of cocaine with intent to deliver conviction. *See Commonwealth v. Murphy*, 592 A.2d 750, 753 (Pa. Super. 1991) ("The trial court should have merged for sentencing purposes the crimes of possession of controlled substances and possession with intent to deliver since both charges stemmed from the same act of possession."). As such, we must vacate Appellant's six-to-twelve-month imprisonment sentence for simple possession of cocaine. Because the simple possession of cocaine sentence was designated to run concurrent with Appellant's longer sentence for possession of cocaine with intent to deliver, our disposition does not disturb the trial court's overall sentencing scheme and there is no need to remand this case for resentencing. *See Commonwealth v. Martinez*, 153 A.3d 1025, 1033 (Pa. Super. 2016) ("We need not remand for re-sentencing, however, as we have not upset the sentencing scheme consisting entirely of concurrent sentences.").

Judgment of sentence for knowing or intentional possession of a controlled substance vacated. Judgments of sentence for possession of controlled substance with intent to deliver and possession of drug paraphernalia affirmed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/2023