J-S47041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MORGAN ROTHHAAR | : | |
| | : | |
| Appellant | : | No. 64 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 29, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003675-2022

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

CONCURRING MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 27, 2025**

I join Judge Kunselman's memorandum opinion affirming the denial of suppression and concluding Rothhaar waived any suppression challenge based on the attenuation doctrine by failing to raise it below and denying Rothhaar's challenge to the admission of Russell Mitchell's testimony. I write separately because I believe it is critical to explain that, contrary to the trial court's holding, the police interaction with Rothhaar was a mere encounter or, alternatively, an investigative detention supported by reasonable suspicion and thus not a violation of Pennsylvania law.

The suppression court held hearings on Rothhaar's motion to suppress on January 9, 2023, and January 31, 2023. In brief, the court found Bensalem Township Police Department Sergeant Matthew Tobie (hereinafter, "Sgt. Tobie"), responded to a report of a burglary in progress in a poorly lit residential neighborhood in Bucks County, seven minutes after the caller said

he heard footsteps in the house.[1]  Sgt. Tobie did not activate his patrol vehicle's lights and sirens.  Just before he reached the caller's home, Sgt. Tobie saw Rothhaar crossing the street from the same side as the caller's home, about two houses away.  Rothhaar carried a backpack in his hands and wore a t-shirt, shorts, and baseball cap.  **See** Trial Court's Findings of Fact and Conclusions of Law, 5/1/23, at 1-3.

Sgt. Tobie commanded[2] Rothhaar to stop and come to his patrol vehicle. Rothhaar approached Sgt. Tobie's driver's side window as Sgt. Tobie remained seated.  Sgt. Tobie saw a large piece of grass on Rothhaar's arm, appearing as if Rothhaar had fallen on the ground.  He asked Rothhaar where he was coming from; Rothhaar said he lived near the area.  Sgt. Tobie told Rothhaar that he seemed nervous and demanded Rothhaar state his name and provide ID.  Rothhaar did not have ID but gave his name and birthday.  Another police officer ran Rothhaar's information in the system while Sgt. Tobie continued to speak with Rothhaar.  Sgt. Tobie remarked he observed Rothhaar coming from the direction of the caller's house; Rothhaar denied being there.  The police

_____

[1] The report Sgt. Tobie received was that the resident believed there was only one intruder; Sgt. Tobie testified Rothhaar was "the first and only person I saw walking around that neighborhood."  **See** N.T., 1/9/23, at 8, 15, 32.  Sgt. Tobie also testified the area was lit but "kind of a wooded area, darker, shaded neighborhood, and residentially quiet" with no businesses.  **See id**. at 20-21.

[2] Sgt. Tobie used the verb "told" to describe his direction to Rothhaar.  **See** N.T., 1/9/23, at 13, 16.

officer who ran Rothhaar's information discovered an outstanding arrest warrant. Rothhaar was subsequently arrested and taken into custody. *See id*.

Officers searched Rothhaar's backpack incident to arrest and found a crowbar, glove, and another metal tool item. Sgt. Tobie testified that he knows these items are commonly used for burglaries. Rothhaar consented to a DNA swab. This DNA sample matched the DNA sample that was obtained the night of the incident from the residence's garage windowsill. *See id*.

The suppression court found Rothhaar was detained without reasonable suspicion. *See id*. at 3-5. It nevertheless vacated its original grant of suppression, concluding the attenuation doctrine permitted the admission of the evidence the police discovered when they arrested Rothhaar. *See id*. at 6-8. The majority finds the attenuation claim waived. I join the majority but write separately to address the encounter between Rothhaar and Sgt. Tobie.

There are three types of encounters between the police and citizens: (1) mere encounters, which carry no official compulsion to stop or respond and require no quantum of suspicion, (2) investigative detentions which require reasonable suspicion and are temporary unless they result in the formation of probable cause and do not possess the coercive conditions of a formal arrest, and (3) custodial detentions which require probable cause. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted); *Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019).

To determine whether police have seized a person, this Court considers whether a reasonable person would have felt free to leave and focuses on whether the person's movement was in some way restrained by physical force or show of authority. *See Commonwealth v. Luczki*, 212 A.3d 530, 543 (Pa. Super. 2019). To make that assessment, we examine the following non-exclusive list of factors:

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction, the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008). *Accord Commonwealth v. Newsome*, 170 A.3d 1151, 1155 (Pa. Super. 2017). To constitute a detention, "the circumstances must present some level of coercion, beyond the officer's mere employment, that conveys a demand for compliance or threat of tangible consequences from refusal." *Luczki*, 212 A.3d at 544.

Thus, it is a mere encounter when police respond to a radio call in a marked cruiser, the defendant walks away from them, and an officer gets out of his car and directs the defendant to "come here." *Newsome*, 170 A.3d at 1156. Similarly, it is a mere encounter when three plainclothes officers get out of an unmarked car, approach a defendant on a street, and ask him what he is doing and if he has anything on his person that could hurt them. *See*

- 4 -

*Commonwealth v. Young*, 162 A.3d 524, 529 (Pa. Super. 2017). *See also*

*Commonwealth v. Lyles*, 97 A.3d 298, 306 (Pa. 2014) (holding a police

officer's request for identification alone does not constitute a seizure,

particularly where the officer does not impair the person's movement, the

interaction takes place on a public street, the officer does not brandish a

weapon or threaten the person, nor does the officer "display[] an aggressive

demeanor or us[e] an authoritative tone suggesting there would be negative

consequences if the [person] failed to identify himself").

The suppression court's factual findings establish Sgt. Tobie arrived at

the scene of the reported burglary *in progress* within seven minutes of the

victim's 911 call indicating someone was in the house because he heard

footsteps on the stairs inside his house. *See* Findings of Fact and Conclusions

of Law, 5/1/23, ¶ 2. Sgt. Tobie did not activate his patrol car's lights and

sirens when he arrived. *See id*. at ¶ 5. Rothhaar was the only person on the

street, and Sgt. Tobie saw him crossing in the middle of the street

approximately two houses away on the same side as the reported burglary

and called him over to his patrol vehicle. *See id*. at ¶ 6. While Sgt. Tobie

spoke to Rothhaar from a seated position in his patrol car, another officer

determined Rothhaar had an outstanding warrant for his arrest. *See id*. at

¶¶ 8, 13.

Nothing in the record suggests Sgt. Tobie or any other officer displayed

a weapon during this encounter on a public street or even employed an

intimidating demeanor or tone of voice, or that Rothhaar experienced any level of coercion or threat beyond the officer's status as a police officer, a directive to stop and come over to his vehicle to talk.[3]  Accordingly, the record facts support the conclusion this was a mere encounter which did not require any quantum of suspicion.  **See Luzcki**, 212 A.3d at 544; **Newsome**, 170 A.3d at 1156; **Young**, 162 A.3d at 529.  Thus, independent of waiver, Rothhaar's suppression claim has no merit, requiring affirmance of the denial of suppression.[4]

Even if a mere encounter analysis were precluded, Sgt. Tobie had reasonable suspicion to support an investigative detention.

In reviewing whether reasonable suspicion exists, this Court examines the totality of the circumstances to determine if there exists "a particularized and objective basis for suspecting an individual of criminal activity." **Commonwealth v. Knupp**, 290 A.3d 759, 767 (Pa. Super. 2023) (citation and brackets omitted).  To establish reasonable suspicion, an officer "must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude,

---

[3] The encounter quickly became a custodial detention when the officers discovered an outstanding warrant for Rothhaar's arrest.

[4] Where the result is correct, we may affirm a trial court's decision on any proper ground even if not cited by that court.  **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

in light of his experience, that criminal activity was afoot." **Commonwealth v. Garcia**, 311 A.3d 1138, 1145 (Pa. Super. 2024) (citation omitted). **See Alabama v. White**, 496 U.S. 325, 329 (1990) (quoting **Terry v. Ohio**, 392 U.S. 1, 22 (1968) (stating a police officer has reasonable suspicion when he is "able to articulate something more than an 'inchoate and unparticularized suspicion or hunch'" that criminal activity is afoot)); **Commonwealth v. Hughes**, 908 A.2d 924, 927 (Pa. Super. 2006).

Although reasonable suspicion requires something more than an observation of a person doing something many people can do legally, **see Garcia**, 311 A.3d at 1145, the likelihood of criminal activity sufficient to establish reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." **Commonwealth v. Gibson**, 335 A.3d 352 (Pa. Super. 2025) (unpublished memorandum at *3).[5] Even a combination of innocent facts, when taken together, may warrant further investigation by the police officer. **See Commonwealth v. Harris**, 176 A.3d 1009, 1021 (Pa. Super. 2019); **Garcia**, 311 A.3d at 1145 (stating reasonable suspicion "need not rule out the possibility of innocent conduct"); **see also Garcia**, 311 A.3d at 1145 (stating that "[w]ithout any possibility of innocence, there would be nothing for the officer to investigate"). A court assessing reasonable suspicion considers the totality of the circumstances giving due

_____

[5] Pursuant to Pa.R.A.P. 126(b), unpublished memoranda filed by this Court after May 1, 2019, may be cited for their persuasive value.

- 7 -

weight to the specific reasonable inferences the police officer is entitled to draw from the facts considering his experience. *See Harris*, 176 A.3d at 1021.

A reasonable suspicion analysis examines the totality of the circumstances considering the officer's experience, not in isolation, *see Commonwealth v. Benitez*, 218 A.3d 460, 471 (Pa. Super. 2019). A combination of innocent facts, taken together, may warrant further police investigation. *See Luczki*, 212 A.3d at 544-45; *Benitez*, 218 A.3d at 471 (stating even where a person's conduct is equally consistent with innocent activity, "the suppression court is not foreclosed from concluding that reasonable suspicion nevertheless existed"). *See Commonwealth v. Cortez*, 491 A.2d 111, 112 (Pa. 1985) (reasonable suspicion exists where police encounter men emerging from a snowy alley and hear dogs barking from that direction).

Assuming, *arguendo*, Sgt. Tobie's direction to Rothhaar constituted a seizure, despite contrary caselaw, *see Newsome*, 170 A.3d at 1156, I believe the evidence amply demonstrated the existence of reasonable suspicion to briefly detain Rothhaar to confirm or dispel suspicion. The evidence at the suppression hearing showed that at 9:46 p.m., the resident of the home being burglarized reported the sound of a single person's footsteps on the stairs of his house. Sgt. Tobie drove to the reported address within **seven minutes** of the victim's 911 call. Upon receiving this call, the officer clearly and

reasonably believed "criminal activity was afoot". The uncontested testimony at suppression indicated that Rothhaar was the only person on the street at almost 10:00 p.m. in what was described as a "residential[,] quiet" neighborhood. N.T. 1/9/23, 21. Rothhaar had a large piece of grass on the sleeve of his shirt and was crossing in the middle of the block from an area only two houses away from the site of the reported burglary. *See id*. at 23. Additionally, Rothhaar had a backpack and was carrying it in his hands rather than on his back,[6] which is more customary. Although those facts might be consistent with innocent activity, in conjunction with a 9-1-1 call of a burglary in progress and the individual's proximity to the house, they established reasonable suspicion and warranted police investigation when viewed in their totality through the eyes of an experienced police officer.[7] *See Cortez*, 491 A.2d at 112; *Garcia*, 311 A.3d at 1145; *Benitez*, 218 A.3d at 471; *Luczki*, 212 A.3d at 544-45. Thus, even if a reasonable suspicion analysis was

_____

[6] Sgt. Tobie watched Rothhaar move the backpack from his hands onto his back. *See* N.T., 1/9/23, at 13. Given his experience and training, Sgt. Tobie found his suspicions raised by [Rothhaar's] carrying of the backpack in his hands, rather than wearing it on his back, especially because in Sgt. Tobie's fourteen years of experience burglars use knapsacks to transport stolen items and burglary tools. *See id*. at 15-16, 19, 31-32. Although the officer testified regarding his extensive experience, the court made no mention of this testimony in its opinion.

[7] Sergeant Tobie testified in his career he had investigated at least 50-100 trespasses and burglaries as a patrol officer with a K9 partner. *See* N.T., 1/9/23, at 6-7.

required, the current law supports a lawful investigative detention in this situation, and an interpretation of the attenuation doctrine unnecessary.

As the undisputed facts indicate, a call to 9-1-1 reported a burglar inside of a home late in the evening on a quiet, residential street. The resident made the call in real time, and police responded to this criminal report within approximately seven minutes. A veteran officer with specific experience in burglary and trespass investigations saw an individual two houses down from the burglary cross the street with a backpack in his hand. Upon seeing this individual, he told the man to stop and come here to talk to the officer and the man complied. The officer remained in his vehicle and talked to the individual, asking for identification and trying to ascertain why this individual was in the neighborhood. The officer did not have lights and sirens engaged, did not draw a weapon, never left his seated position inside his patrol vehicle, and had another officer check the identification provided. Even before the officer could confirm or dispel reasonable suspicion, the officer running the identification information determined that the man had an outstanding arrest warrant, and he was taken into custody for the active warrant. The police action here was, at most, a permissible investigative detention that developed into an arrest for a valid outstanding arrest warrant, unrelated to the 9-1-1 call of an ongoing burglary.

For these reasons and because I find no merit to Rothhaar's claim concerning the admission of Russell Mitchell's testimony, I join the majority memorandum opinion and concur separately.