J-S11006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DESHAWN TORRIEL RUSSELL | : | |
| | : | |
| Appellant | : | No. 800 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 12, 2024
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000223-2023

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: April 9, 2025**

Deshawn Torriel Russell (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count of persons not to possess firearms.[1]  Appellant challenges the sufficiency of the evidence supporting his conviction and the trial court's admission at trial of video surveillance evidence.  After careful review, we affirm.

This case arises from an altercation that occurred on April 3, 2022, involving several patrons of the Sails Inn (the bar), a tavern located at 277 North Gallatin Avenue, Uniontown, Pennsylvania.  Multiple video surveillance cameras were positioned inside and outside of the bar, which captured video of the altercation and its aftermath (the Video).  The Video, which the trial

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

court admitted at trial over Appellant's objection,[2] depicted a verbal and physical altercation between patrons inside the bar, including a man wearing a white hooded sweatshirt and grey sweatpants. Commonwealth Ex. 5 (Camera 5), at 7:30:32-7:33:30. The trial court also admitted into evidence the following still image of the man in the white sweatshirt (the still photograph), obtained from the Video, which, the jury found, depicted Appellant. Commonwealth Ex. 6.



---

[2] **See** N.T., 6/3-4/24, at 56-57, Commonwealth Ex. 5 (the Video).

The parties involved in the altercation eventually exited the bar onto the sidewalk in front of the bar. Commonwealth Ex. 5 (Camera 16), at 7:34:11-7:34:44. The Video showed Appellant, still dressed in a white sweatshirt, point a black handgun at patrons from the bar, including an individual dressed in a black sweatshirt standing next to a black SUV (the SUV), which was parked in front of the bar (shown below). *Id.* (Camera 16), at 7:34:45-7:35:01.



The individual in the black sweatshirt is then shown entering the SUV, after which Appellant fired the weapon at another individual seated inside the SUV.[3] *Id.* (Camera 16), at 7:35:02-7:35:17. The SUV is then shown speeding away from the scene. *Id.* (Camera 16), at 7:35:18-7:35:21.

After the shooting, police obtained the Video, identified Appellant as the man depicted wearing a white sweatshirt, and charged him with persons not to possess firearms.[4] On October 4, 2023, the trial court issued a bench warrant for Appellant's arrest.

Following Appellant's arrest, the matter proceeded to a jury trial on June 3 and 4, 2024. Prior to the commencement of testimony, the trial court considered argument from the parties regarding the admissibility of the Video. *See* N.T., 6/3-4/24, at 5-7. The Commonwealth announced its intention to introduce the Video through the testimony of its two trial witnesses: Thomas Elias (Mr. Elias), the owner of the bar; and Uniontown Police Detective Jamie Holland (Detective Holland), who was involved in the investigation. *Id.* at 6. The Commonwealth maintained that Mr. Elias would testify that he "has control of all of the [video] cameras" at the bar. *Id.* After the shooting in the

_____

[3] The record reflects that an individual inside the SUV was struck by gunfire, but this individual did not testify at trial or give a police statement. N.T., 6/3-4/24, at 8.

[4] The Commonwealth also charged Appellant with several other crimes, including attempted homicide, which were subsequently dismissed at Appellant's preliminary hearing. At Appellant's trial, the prosecutor explained that "[n]o one has cooperated in this case and that is why the other charges [against Appellant] haven't made it to trial…. We are not going to address the shooting." N.T., 6/3-4/24, at 8.

instant case, Mr. Elias "reported to the Uniontown Police Station with the [Video] footage on his cell phone, which was downloaded to [a compact] disc[,] which was provided to the defense[.]" *Id.*

Appellant objected, arguing that the Commonwealth's witnesses could not authenticate the Video:

> [T]he issue that I believe we're going to have with the foundation [of the Video] is that I don't believe that the [bar's surveillance] system is run by Mr. Elias. He hired someone to run [the surveillance] system and we'll find that out in his testimony. [Mr. Elias] is not the expert who installed [the surveillance] system and he can't testify as to how it works or how accurate it is[.] …. My understanding, based on the discovery, is that Mr. Elias was not [at the bar] when [the shooting] happened. And based upon the witnesses, … we don't have a witness to say that [the Video] is an accurate depiction of what happened [on April 3, 2022].

*Id.* at 7. The trial court announced that it would defer ruling on the matter until the Commonwealth introduced the Video into evidence. *Id.*

Mr. Elias testified he had owned the bar for thirty years. *Id.* at 35-36. Approximately fifteen years prior to the shooting in the instant case, Mr. Elias hired a third-party technician, Dennis Morris (Mr. Morris), to install several surveillance cameras inside and outside of the bar.[5] *Id.* at 36, 43. Mr. Elias testified that he has remote access to the bar's surveillance video. *Id.* at 44. Mr. Elias was not present at the bar on the date of the shooting. *Id.* at 45.

_____

[5] Mr. Morris did not testify at trial or provide any statement to law enforcement in connection with this case. At trial, Mr. Elias confirmed on cross-examination that Mr. Morris 1) was responsible for ensuring that the bar's video cameras were recording properly; and 2) also has remote access to the bar's cameras. N.T., 6/3-4/24, at 44.

- 5 -

After the shooting, Mr. Elias provided the Video to the Uniontown Police Department. *Id.* at 43; *see also id.* at 36-37 (Mr. Elias stating that on previous occasions, he had given the Uniontown Police surveillance video captured by the bar's cameras). Mr. Elias confirmed that if he viewed a "freeze frame of [the Video] and footage from the outside of the bar," he would be able to "recognize that as [the] bar[,]" as it appeared on the date of the shooting. *Id.* at 36.

When the Commonwealth sought to introduce the Video during Mr. Elias's testimony, Appellant renewed his objection to the Video's authenticity. *Id.* at 38-39. The trial court overruled the objection, reasoning as follows:

> I am going to find that the Commonwealth has show[n] that the [bar's video] cameras were functioning properly, … and [Mr. Elias] has indicated that … of the sixteen [cameras], one was in the bar[]room area, one [was] focusing on the parking or outside area, and that those camera[s] recorded those areas as they were placed there to do.
>
> * * *
>
> I find that sufficient for authentication purposes for the record[.] …. [For purposes of authentication of video evidence, y]ou can call [as a witness] a technician or call someone with familiarity with the [video] system. [Mr. Elias] has owned [the bar's surveillance system] for fifteen years and has [previously] had to download [surveillance video from the bar] for the Uniontown Police Department[;] therefore, he is familiar with the operating system, an[d] I will overrule [Appellant's] objection.

*Id.* at 39-40. The Commonwealth then played portions of the Video for the jury. *Id.* at 41-42. Mr. Elias confirmed that the Video excerpts depicted the interior and exterior of the bar as it existed on the date of the shooting. *Id.*

The Commonwealth next presented Detective Holland's testimony. Detective Holland testified that he responded to the bar shortly after the shooting and collected evidence, including one fired .45 caliber bullet casing from the sidewalk directly in front of the bar. *Id.* at 47-48; Commonwealth Ex. 1 (bullet casing); *see also id.* at 47 (Detective Holland stating police did not recover a firearm at the scene). Detective Holland submitted the bullet casing for forensic DNA testing and fingerprint analysis, which did not reveal any identifiable fingerprints or DNA evidence. *Id.* at 50-51. Detective Holland further testified that Mr. Elias gave him the Video following the shooting. *Id.* at 53.

When the prosecutor announced his intention to play for Detective Holland the portion of the Video that depicted the shooting, Appellant objected. *Id.* at 57. The following exchange then occurred:

> [Appellant's counsel]: Your Honor, I renew the objection that I made prior to trial. [The V]ideo … depicts a firearm being discharged into [the SUV] and I object to that on the grounds that [the Video] is not relevant to the crime and is prejudicial and clearly[,] the prejudice outweighs any benefit that supports [the Commonwealth's] case.
>
> * * *
>
> [The Commonwealth]: The probative value of having [the jury] see the [bullet] cartridge ejected from the firearm[] outweighs any prejudicial [effect] against [Appellant].
>
> THE COURT: I will overrule the objection. …. I find that [the] probative value of showing the [bullet] casing [being] ejected, and that it was a gun, it was not a toy pistol or a water gun, … outweighs the prejudicial [e]ffect.

*Id.* at 57-58 (punctuation modified).

The Commonwealth then played the portion of the Video depicting the shooting for the jury. *Id.* at 59; *see also* Commonwealth Exhibit 5 (Camera 16), at 7:34:44-7:35:17. Detective Holland testified that the Video showed "[Appellant] holding a firearm in his right hand and pointing it at other patrons from the bar." *Id.*

Moreover, Appellant and the Commonwealth stipulated that at the time of trial, Appellant had a prior conviction that rendered him legally ineligible to possess a firearm.[6] *Id.* at 62-64, 111; Commonwealth Ex. 8.

After the conclusion of the Commonwealth's case-in-chief, Appellant moved for judgment of acquittal. *Id.* at 79-80. Appellant's counsel argued that

> [t]he only evidence really that [the Commonwealth has is the V]ideo [] supposedly linking [Appellant]. We don't believe that … the jury can identify the individual sufficiently to point a finger at [Appellant] from [the V]ideo. There is no forensic evidence, no DNA, no [finger]prints, [] nothing to link [Appellant] to this [incident at the bar.]

*Id.*

The Commonwealth responded that the evidence sufficiently established Appellant's identity as the perpetrator, arguing that

---

[6] The record reveals that "[Appellant] has a 2017 conviction for receiving stolen property," 18 Pa.C.S.A. § 3925(a). N.T., 6/3-4/24, at 111; *see also* Affidavit of Probable Cause, 4/4/22 (stating Appellant had a prior juvenile adjudication for possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30)).

[from] the still photograph, the jury can make their own assumption. [The man pictured in the still photograph] has the same facial features, same facial hair[,] and the individual that [the Video,] in camera 5[, depicts inside] the bar[, and the individual] is dressed in the same clothing with the same, again, facial features, as the individual that we have in the still photo[graph]. …. The jury can determine whether or not that is the individual that they see in the [V]ideo. The [V]ideo is extremely clear and … the jury … can make their own assumption if [Appellant] is the individual [depicted in the Video.]

*Id.* at 80. The trial court denied the motion for judgment of acquittal, stating it found "that there is sufficient evidence for the jury to make a determination as to identification and as to the other elements of the offense charged." *Id.* at 81.

Appellant testified as the sole defense witness and asserted he had never been to the bar, and was not pictured in the Video. *Id.* at 85-86. Appellant alleged that at the time of the shooting, he was not in Uniontown. *Id.* at 86. On cross-examination, the prosecutor showed Appellant the still photograph and asked Appellant if he was the man pictured, which Appellant denied. *Id.* at 87-88.

The jury then retired to deliberate. During deliberations, the jury requested to view the Video again. *Id.* at 116. The trial court played the Video for the jury, with the consent of the parties. *Id.* at 116-18; *see also id.* at 117 (trial court noting for the record that Appellant was present in the courtroom when the jury again viewed the Video). The jury subsequently found Appellant guilty of persons not to possess firearms. *Id.* at 121. The

trial court deferred sentencing for the preparation of a presentence investigation report.

On June 12, 2024, the trial court sentenced Appellant to five to ten years in prison. Appellant did not file post-sentence motions. This timely appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

1. Whether the trial court committed an abuse of discretion when it admitted the [] Video (and photographs) over Appellant's objections, where the Commonwealth failed to present a witness with personal knowledge of the events depicted on the Video [stating it] was a fair and accurate depiction of the events depicted?

2. Whether the [trial court] committed reversible error by failing to exclude the [] Video and/or photographs depicting the actor in the Video shooting a handgun at another person as unduly prejudicial[,] in violation of Pa[.]R.E. 403?

3. Whether the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant was in possession of a firearm?

Appellant's Brief at 4 (capitalization altered).[7]

Appellant first argues the trial court erred in overruling his objection at trial to the admission of the Video, where the Commonwealth failed to establish the Video's authenticity. *See id.* at 12-16. Appellant points out that the Commonwealth did not call any witness who was present at or outside of the bar on the date of the shooting. *Id.* at 12. Appellant further posits that

---

[7] The Commonwealth did not file an appellate brief.

the Commonwealth failed to authenticate the Video via Mr. Elias's testimony, where Mr. Elias testified "that he relied on [Mr.] Morris to install and maintain the surveillance system" that captured the Video. *Id.* at 15. According to Appellant,

> Mr. Elias'[s] testimony is plainly insufficient to authenticate the [] Video and/or photographs taken from the Video, because he had no knowledge whatsoever on the functioning of the surveillance system. Most significantly, Mr. Elias was not present at the [bar] on April 3, 2022, and did not witness any of the alleged events purportedly depicted on the [] Video and, as a result, was not competent to authenticate the [] Video evidence.

*Id.* at 14 (capitalization modified); *see also id.* at 15 ("While Mr. Elias paid for the surveillance cameras, there is no evidence that he was familiar with the operation of the system").

"We review a challenge to the trial court's evidentiary rulings for an abuse of discretion." *Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025) (citation omitted); *see also Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015) ("[T]he appellant sustains the 'heavy burden' to show that the trial court has abused its discretion." (citation omitted)). Accordingly, our standard and scope of review is narrow:

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary.

*Williamson*, 330 A.3d at 414 (citation omitted).

Pennsylvania Rule of Evidence 901 mandates that, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a); ***see also Commonwealth v. Serge***, 896 A.2d 1170, 1177 (Pa. 2006) ("Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict." (citation omitted)). Rule 901(b) provides a non-exhaustive list of "examples … of evidence that satisfies the requirement" of Rule 901(a), including:

> **(1) *Testimony of a Witness with Knowledge*.** Testimony that an item is what it is claimed to be.
>
> ….
>
> **(4) *Distinctive Characteristics and the Like*.** The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
>
> ….
>
> **(9) *Evidence About a Process or System*.** Evidence describing a process or system and showing that it produces an accurate result.
>
> ….
>
> **(11) *Digital Evidence*.** To connect digital evidence with a person or entity:

**(A)** direct evidence such as testimony of a person with knowledge; or

**(B)** circumstantial evidence, such as:

**(i)** identifying content;

**(ii)** proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b). It is well-settled that **authentication pursuant to Rule 901(a) "generally entails a relatively <u>low</u> burden of proof**[.]" ***Commonwealth v. Kurtz***, 294 A.3d 509, 527 n.12 (Pa. Super. 2023) (emphasis added), ***appeal granted***, 306 A.3d 1287 (Pa. 2023); ***Commonwealth v. Murray***, 174 A.3d 1147, 1157 (Pa. Super. 2017) (same).

This Court previously addressed authentication of video evidence in ***Commonwealth v. Impellizzeri***, 661 A.2d 422 (Pa. Super. 1995), ***appeal denied***, 673 A.2d 332 (Pa. 1996). There, we stated that to authenticate video evidence, "[i]t is not necessary that the maker of the videotape testify to the tape's accuracy; any witness familiar with the subject matter can testify that the tape was an accurate and fair depiction of the events sought to be shown." ***Id.*** at 428 (citations omitted); ***see also Nyce v. Muffley***, 119 A.2d 530, 532 (Pa. 1956) (stating authentication testimony may be provided by the person who recorded a photograph or video, or by some other witness "with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time" of recording).

- 13 -

We are guided by our decision in **Commonwealth v. Gamrod**, 221 A.3d 268 (Pa. Super. filed Aug. 13, 2019) (unpublished memorandum).[8]  In **Gamrod**, the appellant/defendant and her ex-boyfriend, Frank Tustin (Tustin), "informally shared custody of their young son, and so remained in constant, if quarrelsome, contact." **Id.** (unpublished memorandum at 1).  On the evening of November 23, 2012, appellant arrived outside of Tustin's apartment complex, banged on Tustin's door, shouted for several minutes, and threatened to slash Tustin's car tires.  **Id.**  At the time, Tustin's paramour, Celeste Marshall (Marshall), was inside of Tustin's apartment with Tustin, and Marshall's car was parked in the apartment complex's parking lot (the parking lot).  **Id.**  (unpublished memorandum at 1-2).  Tustin refused appellant entry, after which appellant eventually left the area.  **Id.**

> One or two days later, Marshall noticed a long, jagged scrape running down the passenger side of her vehicle.  She told Tustin she believed [that a]ppellant had caused the damage.  Tustin contacted the manager of his apartment building, who checked the [apartment] complex's [video] security tapes and alerted Tustin to footage of a woman using keys to scratch Marshall's vehicle [in the parking lot].  Marshall gave the videotape to police.

**Id.** (unpublished memorandum at 2).

The Commonwealth subsequently charged appellant with criminal mischief, after which the matter proceeded to a non-jury trial.  **Id.**  At trial, the Commonwealth moved to admit the video footage of the parking lot

---

[8] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019, may be cited for their persuasive value.

recorded at the time appellant allegedly damaged Marshall's car. *Id.* (unpublished memorandum at 4).

> Appellant objected on the grounds that the maker of the video was not present in the courtroom to authenticate it. In response, the Commonwealth elicited testimony from Marshall that she was familiar with the area pictured in the video. Marshall stated that the camera displayed the side of Tustin's apartment complex, the parking lot for residents, and the road abutting the building. Marshall also attested that she could see her car in the video, parked parallel to Tustin's car, in the same spot where it was parked on the night of November 23, 2012. She affirmed the area in the video looked just as it did on that night. Based on the foregoing, the trial court overruled [a]ppellant's objection and deemed the evidence admissible.

*Id.* (unpublished memorandum at 4-5) (record citations omitted). The trial court convicted appellant of criminal mischief. *Id.* (unpublished memorandum at 2).

On appeal, appellant argued the trial court erred in admitting the surveillance video into evidence, as the Commonwealth failed to properly authenticate it. *Id.* (unpublished memorandum at 3). We disagreed and emphasized this Court's statement in *Impellizzeri*, *supra*, that to authenticate video evidence, "[i]t is not necessary that the maker of the videotape testify to the tape's accuracy; **any witness familiar with the subject matter** can testify that the tape was an accurate and fair depiction of the events sought to be shown." *Gamrod*, 221 A.3d 268 (unpublished memorandum at 4) (quoting *Impellizzeri*, 661 A.2d at 428 (emphasis in *Gamrod*)). We held that

- 15 -

[d]espite appellant's objection, the Commonwealth was not required to present testimony from the manager of the apartment complex whose cameras recorded the video. Rather, the Commonwealth's obligation was to ensure a witness familiar with the subject matter—Marshall, a frequent visitor to the apartment building—testified that the video was a fair and accurate depiction of events. …. We conclude the trial court did not abuse its discretion in admitting the videotape.

*Id.* (unpublished memorandum at 5) (capitalization modified).

Instantly, the trial court opined that Mr. Elias, a witness intimately familiar with the subject matter depicted in the Video, properly authenticated the Video:

Mr. Elias, having owned the [bar's surveillance system] for a period of fifteen (15) years, and having [previously] used the [surveillance] system, even going as far as downloading [surveillance] footage for law enforcement on prior occasions, has sufficient knowledge to authenticate the [V]ideo footage as having been pulled from the [bar's] security cameras. Therefore, the trial court did not err in admitting the [Video] and the accompanying photographs.

Trial Court Opinion, 9/5/24, at 3. The trial court's reasoning is supported by the record and the law, and we agree with its determination.

Mr. Elias testified that he had owned the bar for thirty years, was familiar with its surveillance system and the bar property generally, and confirmed that if he viewed a "freeze frame of [the Video] and footage from the outside of the bar" captured on the date of the shooting, he would be able to "recognize that as [the] bar[.]" N.T., 6/3-4/24, at 35-36; *see also id.* at 41-42 (Mr. Elias confirming that the Video depicted the interior and exterior of the bar as it existed on the date of the incident). Such testimony is sufficient

to satisfy the Commonwealth's "relatively low burden of proof" with respect to authentication of the Video. *Kurtz*, 294 A.3d at 527 n.12; *see also Impellizzeri*, 661 A.2d at 428; *Gamrod*, 221 A.3d 268 (unpublished memorandum at 5). Moreover, based on our review of the record, there is no indication that the Video depicts anything other than "that which it purports to depict."[9] *Serge*, 896 A.2d at 1177. We conclude the trial court did not abuse its discretion by finding that the Commonwealth properly authenticated the Video. *See Williamson*, 330 A.3d at 414; Pa.R.E. 901(a). Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant argues in the alternative that even if the Video was properly authenticated, the trial court erred in failing to exclude it as being unduly prejudicial to the defense. *See* Appellant's Brief at 16-17. According to Appellant, the "probative value [of the Video] was clearly outweighed by its potential for prejudice[,] where the [V]ideo depicted the actor with [a] handgun point at a person [] in [the SUV] and shoot the firearm." *Id.* at 16. Appellant claims that in order to prove the elements of persons not to possess firearms, the Commonwealth "had no need to show the portion of the [] Video purportedly depicting an actor shooting a person with a handgun." *Id.* at 17 (capitalization modified); *see also id.* ("[Appellant] was not charged … with aggravated assault or attempted

---

[9] Appellant never argued that the Video had been altered or modified in any way.

- 17 -

homicide."). According to Appellant, "[f]rom the jury's perspective, evidence that another person was shot at close range is likely to inflame the jury when the only issue to be decided was whether [Appellant] was simply in possession of a firearm." *Id.*

"The threshold inquiry with admission of evidence is whether evidence is relevant." *Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence[,]" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). Pursuant to Rule of Evidence 403, **a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of** one of more of the following: **unfair prejudice**, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403 (emphasis added); *see also Commonwealth v. Brown*, 212 A.3d 1076, 1086 (Pa. Super. 2019) ("Admission of evidence rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury." (citations and ellipses omitted)). "Unfair prejudice," in the context of applying Rule 403, means "a tendency to suggest decision on an improper basis to divert the jury's attention away from its duty of weighing the evidence impartially."

*Commonwealth v. Kane*, 188 A.3d 1217, 1228 (Pa. Super. 2018) (citation omitted); *see also* Pa.R.E. 403, cmt.

However, "[e]vidence will not be prohibited merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision upon something other than the legal propositions relevant to the case." *Commonwealth v. Knupp*, 290 A.3d 759, 776 (Pa. Super. 2023) (citation, brackets, and quotation marks omitted).

> Not surprisingly, criminal defendants always wish to excise evidence of unpleasant and unpalatable circumstances surrounding a criminal offense from the Commonwealth's presentation at trial. Of course, the courts must make sure that evidence of such circumstances have some relevance to the case and are not offered solely to inflame the jury or arouse prejudice against the defendant. The court is not, however, required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged….

*Commonwealth v. Bidwell*, 195 A.3d 610, 617 (Pa. Super. 2018) (quoting *Commonwealth v. Lark*, 543 A.2d 491, 501 (Pa. 1988)); *Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (same).

Instantly, the trial court opined it properly exercised its discretion in admitting the Video into evidence, and determining that its probative value was not outweighed by unfair prejudice to Appellant. Trial Court Opinion, 9/5/24, at 4 (concluding "that the probative value of [the Video] greatly outweighs its prejudicial effect."). We agree. As the trial court correctly observed when overruling Appellant's objection based on Rule 403, the

- 19 -

"probative value of showing [a] casing [being] ejected [from the gun,] and that it was a gun, [and] not a toy pistol or a water gun[,]" "outweighs the prejudicial [e]ffect." N.T., 6/3-4/24, at 58. Evidence of Appellant's firing the gun was further "relevant to the issues at hand and form[ed] part of the history and natural development of the events and offenses for which [Appellant was] charged[.]" **Bidwell**, 195 A.3d at 617 (citation omitted); **see also Knupp**, 290 A.3d at 776 ("**Evidence will not be prohibited merely because it is harmful to the defendant.**" (emphasis added)). Accordingly, we conclude the trial court did not abuse its discretion in admitting the Video over Appellant's objection. Appellant's second issue does not merit relief.

In his final issue, Appellant argues the Commonwealth failed to present sufficient evidence for the jury to convict him of persons not to possess firearms. **See** Appellant's Brief at 17-18. Appellant maintains that the Video "is insufficient to identify him as the actor depicted in the [V]ideo with the handgun." **Id.** at 18. Appellant points out that "the Commonwealth relied exclusively on [the V]ideo in an effort to meet its burden of proving that [Appellant] was in possession of a firearm." **Id.**

We review Appellant's sufficiency challenge pursuant to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient

to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Scott***, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Peters***, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation omitted), ***appeal granted***, 409 MAL 2024, 2025 WL 30772, 2025 Pa. LEXIS 2 (Pa. Jan. 6, 2025).

To sustain a conviction for persons not to possess firearms under 18 Pa.C.S.A. § 6105(a)(1), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he previously had been convicted of an enumerated offense[10] that prohibits him from, *inter alia*, possessing, using, or controlling a firearm. ***Id.***

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the

---

[10] Here, as detailed above, the parties stipulated that Appellant had a prior conviction for an enumerated offense under Section 6105. ***See*** N.T., 6/3-4/24, at 62-64, 111; Commonwealth Ex. 8.

identity of the defendant as the perpetrator of the crimes."[11]

***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). It is well-settled that "[e]vidence of identi[ty] need not be positive and certain to sustain a conviction." ***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citation omitted).

> [E]ven if the Commonwealth presented only circumstantial evidence and offered no positive identification of the [perpetrator], we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove [the accused's] guilt.

***Commonwealth v. Robertson***, 874 A.2d 1200, 1206 (Pa. Super. 2005).

Instantly, the trial court opined that the Commonwealth presented sufficient evidence for the jury to establish Appellant's identity as the perpetrator beyond a reasonable doubt:

> [T]he Commonwealth needed to present evidence sufficient to demonstrate that Appellant possessed a firearm and that Appellant was a person not lawfully able to do the same. The Commonwealth is not required to preclude every possibility of innocence or establish the Appellant's guilt to a mathematical degree of certainty. ***Commonwealth v. Williams***, 871 A.[]2d 254, 259 (Pa. Super. 2005). Evidence was presented at trial which showed an individual with a resemblance to Appellant wielding a firearm. [***See*** Commonwealth Ex. 5 (Camera 16), at 7:34:44-7:35:17.] It follows that a reasonable trier-of-fact could conclude that [Appellant] is guilty of the charged offense.

Trial Court Opinion, 9/5/24, at 4.

---

[11] Here, the only element that Appellant challenges is his identity as the perpetrator. Appellant's Brief at 18.

We agree with the trial court's analysis. Our review confirms that the evidence presented at trial, properly viewed in the light most favorable to the Commonwealth, sufficiently established Appellant's identity as the perpetrator and the required elements of persons not to possess firearms. The jury was free to determine, based on its viewing of the Video (on repeated occasions), as well as its observation of Appellant in court, that Appellant was the man depicted in the Video holding a gun. *See*, *e.g.*, *Commonwealth v. Harris*, 884 A.2d 920, 933 (Pa. Super. 2005) (stating a jury is in an adequate position to determine, without additional testimony, whether a person in a video image is recognizable as the defendant). This Court "will not usurp the province of the jury." *Peters*, 320 A.3d at 1243 (citing *Commonwealth v. Sanchez*, 82 A.3d 943, 972 (Pa. 2013) (stating that in reviewing a sufficiency challenge, an appellate court "may not substitute [its] judgment for the jury's, as it is the fact-finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted.")). Accordingly, Appellant's sufficiency challenge lacks merit.

Based on the foregoing, we discern no abuse of the trial court's discretion or error of law and thus affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 04/09/2025