J-S44002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL LUMONT STEWART | : | |
| | : | |
| Appellant | : | No. 957 EDA 2025 |

Appeal from the Judgment of Sentence Entered February 27, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002575-2023

BEFORE:  LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:              **FILED MARCH 31, 2026**

Nathaniel Lumont Stewart appeals from the judgment of sentence, entered in the Court of Common Pleas of Bucks County, after a jury convicted him of possession of a controlled substance with the intent to distribute, possession of a controlled substance, and possession of drug paraphernalia.[1] On appeal, Stewart challenges the denial of his motion to suppress physical evidence obtained from the search of his car and the grant of the Commonwealth's motion to admit "other acts" evidence pursuant to Pa.R.E. 404(b).  After careful review, we affirm.

In March 2023, Detective Daniel Naftulin of the Bucks County Drug Strike Force was investigating drug-related activity involving Stewart.  *See* N.T. Jury Trial, 1/7/25, at 62.  Through a confidential informant (CI), Detective

_____

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), (a)(32).

Naftulin learned that Stewart was distributing methamphetamine and cocaine in Bucks County and the State of New Jersey. *See* Affidavit of Probable Cause, 4/13/23, at 5. As part of Detective Naftulin's investigation, he employed the CI to conduct controlled purchases of contraband from Stewart. *See* N.T. Jury Trial, 1/7/25, at 138-39. The CI was deemed a reliable source by Detective Naftulin, as the CI had provided law enforcement with credible information in the past and cooperated with other law enforcement agencies. *See* Affidavit of Probable Cause, 4/13/23, at 5.

The CI made two controlled purchases for Detective Naftulin, the first of which took place during the week of March 20, 2023.[2] *Id.* at 6. During "Controlled Buy 1," Detective Naftulin first met with the CI and had the CI call Stewart to designate a location and price for the purchase. *Id.* Detective Naftulin was able to listen in on this phone call. *Id.* After the call ended, Detective Naftulin searched the CI and the CI's vehicle, found no contraband, weapons, or currency on the CI or in the vehicle, and provided the CI with a specific amount of pre-recorded money to make the controlled purchase. *Id.* Detective Naftulin then followed the CI to the arranged meeting location, never losing sight of the CI along the way, until the CI and Detective Naftulin both parked in the area of the designated purchase spot. *Id.* at 6-7.

_____

[2] The Commonwealth told the trial court during a pre-trial conference that it would refrain from seeking to admit any testimony regarding Controlled Buy 1 at trial. *See* N.T. Pre-Trial Motions Hearing, 7/10/24, at 83. However, we note that the Affidavit of Probable Cause, which supported the issuance of the two search warrants for the Stewart's residence and vehicle, references both controlled buys.

Meanwhile, police surveillance units observed Stewart exit the front door of 69 North Pennsylvania Avenue, Apartment B, in Morrisville Borough, and get into his blue Honda Pilot with Pennsylvania plates. *Id.* at 7. Stewart was then observed driving directly to the designated location to meet with the CI. *Id.*

When Stewart arrived at the controlled buy location, the CI got out of his vehicle and entered Stewart's blue Honda Pilot. *Id.* Police then observed the CI exit the Honda Pilot to return to his own vehicle, and Detective Naftulin followed the CI back to a neutral location where the CI's person and vehicle were searched again. *Id.* After being cleared of any weapons, contraband, or pre-recorded currency, the CI provided Detective Naftulin with a clear bag later determined to contain methamphetamine. *Id.* at 7-8.

The second controlled buy, "Controlled Buy 2," took place on April 11, 2023. *See* N.T. Jury Trial, 1/7/25, at 141. Again, Detective Naftulin had the CI call Stewart on speaker phone, in his presence, to set up a designated location and price for the buy. *Id.* at 142. The CI told Stewart that he wanted to purchase one half-pound of methamphetamine and agreed upon $1,100.00 as the purchase price. *Id.* Just as with Controlled Buy 1, Detective Naftulin first searched the CI and the CI's vehicle to make sure he did not possess any weapons, contraband, or currency, and then provided the CI with pre-recorded buy money. *Id.* at 143-44. This time, Detective Naftulin also

provided the CI with a RAV[3] phone that allowed police to listen to and record conversations and video during the buy. *Id.* at 144. Next, Detective Naftulin followed the CI to the designated controlled-buy location. *Id.* at 145.

Surveillance units set up at Stewart's residence in Morrisville Borough again witnessed him exit his North Pennsylvania Avenue apartment and get into his blue Honda Pilot. *See* Affidavit of Probable Cause, 4/13/23, at 9. Police surveillance officers then followed Stewart to a location near his residence, which was not the designated buy location. *Id.* Stewart remained parked at that location for approximately ten minutes, which Detective Naftulin believed was done intentionally so that Stewart could ascertain if he was being followed by law enforcement. *Id.* Stewart then drove back to his residence, entered the rear door of his apartment, and reappeared outside his residence approximately five minutes later holding a red box. *Id.* Stewart placed the box on the back seat of the blue Honda Pilot and then drove to meet the CI at the designated location. *Id.*

On the way to the designated location, Stewart stopped his vehicle once more on the side of the road to determine whether he was being surveilled. *Id.* Officers confirmed that, at this time, Stewart was being continuously monitored and did not meet with any other individuals. *Id.* Four minutes

---

[3] Detective Naftulin testified that a "RAV" phone is "basically a cellular telephone with certain applications on it to allow law enforcement . . . to record the conversations and also video the encounter." *Id.* at 144.

later, Stewart continued on to the designated location. *Id.* Again, when Stewart arrived at the prearranged buy location, the CI exited his vehicle and got into Stewart's blue Honda Pilot. *Id.* From the RAV phone audio, Stewart could be overheard asking the CI if "[he] had cash on [him]" and telling the CI "there was a lot of shake[4] in the bag." N.T. Jury Trial, 1/7/25, at 147. The CI then exited Stewart's Honda Pilot and returned to his own vehicle. *Id.* Detective Naftulin followed the CI back to a neutral location, conducted a search of the CI's vehicle and person, and the CI provided him with the specific amount of methamphetamine that he had ordered from Stewart. *Id.* at 148. Additionally, the CI no longer had the prerecorded buy money in his possession. *Id.*

Following Controlled Buy 2, Detective Naftulin executed two affidavits of probable cause seeking search warrants for Stewart's residence (CS-2) and Stewart's blue Honda Pilot (CS-3). *Id.* at 154. The search warrants were issued and executed on April 13, 2023. *Id.* at 157. At the time of execution, Stewart had just driven away from his North Pennsylvania Avenue residence in his blue Honda Pilot and was pulling into a Dunkin Donuts gas station parking lot. *Id.* at 158. Police officers, including Detective Naftulin, approached the vehicle once it was parked in the lot and conducted a traffic

_____

[4] Detective Naftulin testified that "shake" is broken down pieces of methamphetamine. *Id.* at 148.

stop. *Id.* Police recovered a key from Stewart's left pant pocket,[5] then placed Stewart in the front-seat passenger side of Detective Naftulin's unmarked police vehicle, at which time Stewart told Detective Naftulin that he was willing to cooperate.[6] *Id.* at 159. Law enforcement called a tow truck to the scene, which transported Stewart's vehicle back to the evidence warehouse so it could be impounded and searched. *Id.* at 86.

Detective Brian Rimple of the Bucks County District Attorney's Office, along with other officers, executed the search warrant for Stewart's Honda Pilot. *Id.* Upon searching the vehicle, Detective Rimple recovered a bag of methamphetamine from inside a shoe box[7] located on the backseat of the car.

---

[5] During the arrest, when told to put his hands in the air, Stewart did not cooperate at first and kept his left hand in his pocket. *See id.* at 53. Because of this, police believed that Stewart had a knife. *See id.* This led officers to search his person, which they had permission to do from the search warrant and for safety purposes. *See id.*; N.T. Pre-Trial Motions, 7/10/24, at 87. However, no knife was ever recovered from the scene, and after reviewing the body camera footage, Corporal Lew Halas testified that Stewart had locked his car with the key in his left pant pocket. *See* N.T. Jury Trial, 1/7/25, at 55.

[6] Stewart raised a *Miranda* issue concerning this interaction in his pre-trial motion. *See* Pre-Trial Motion to Suppress, 6/20/24. According to the court's pre-trial ruling, the only two statements to be admitted from this interaction between Stewart and Detective Naftulin in the detective's vehicle were Stewart's spontaneous utterances of "are you the feds?" and "I want to cooperate." *See* N.T. Pre-Trial Motions Hearing, 7/10/24, at 88. Consequently, Stewart did not raise any *Miranda* objections at trial, and does not raise any *Miranda* issues on appeal.

[7] There is testimony that this box was a New Balance shoe box; however, while the box was physically shown to the jury and admitted into evidence as
*(Footnote Continued Next Page)*

*Id.* at 87. Additionally, he found $2,290.00 in cash in a compartment on the driver's side door and "baggies and wallets" in the car's center console. *Id.* at 87-88. The baggies were empty, and Detective Rimple testified that he could not remember whether the wallets had anything in them. *Id.* 90, 96.

Detective Jarrod Eisenhauer, also from the Bucks County District Attorney's Office, executed the search warrant for Stewart's residence along with other officers. *Id.* at 69-70. There, police recovered a digital scale and a bowl—both containing drug residue—inside of a lunchbox sitting in a cabinet above Stewart's refrigerator. *Id.* at 73-74.

About one month after being arrested and placed into custody, Stewart agreed to a proffer agreement, whereby he would cooperate with police in exchange for a recommendation to the sentencing judge. *See id.* at 162. The proffer consisted of a Memorandum of Understanding (MOU) and an oral statement from an interview, both signed and conducted with counsel present. *Id.* The MOU provided, in short, that Stewart would cooperate fully with law enforcement, be truthful in any information he provides to the police/judicial bodies, and refrain from committing any further crimes. *See* Memorandum of Understanding, 5/18/23, at 1-2. Stewart and his attorney amended[8] the

---

Commonwealth Exhibit 6, there is no picture of the box in the record to enable us to confirm its color.

[8] The amended language included the following: "[i]n exchange for [Stewart]'s cooperation, the only thing that is promised is that the full extent
*(Footnote Continued Next Page)*

MOU before all parties signed it. *Id.* at 2. Thereafter, Detective Naftulin conducted a lengthy, recorded interview[9] of Stewart pursuant to the MOU.

After police executed the search warrants, Stewart was charged with the aforementioned offenses. Stewart filed a pre-trial suppression motion contending that the search of his vehicle was unlawful because the search warrant was not supported by probable cause. The following day, the Commonwealth filed a pre-trial motion, requesting, notably, that the trial court admit Stewart's other crimes, wrongs, or acts as evidence, and that it admit Stewart's counseled, recorded proffer statement as well. *See supra* at n.9.

On July 10, 2024, the Honorable Charissa J. Liller presided over a hearing on the motions. Following the hearing, Judge Liller denied Stewart's suppression motion with regard to both search warrants, CS-2 and CS-3,

_____

and nature of his cooperation will be made known to the sentencing judge." *Id.* This amendment was handwritten onto the document. *Id.*

[9] This interview lasted for more than one hour, from which specific statements were selected by the Commonwealth for presentation to the jury in accordance with the trial court's grant of the Commonwealth's pre-trial motion. *See* N.T. Pre-Trial Motions Hearing, 7/10/24, at 79. Certain statements were played to the jury during trial and certain statements were testified to by Detective Naftulin. *See* N.T. Jury Trial, 1/7/25, at 164-65. These statements covered: (1) the manner in which Stewart would repackage drugs; (2) what Stewart would do with the proceeds of the drug sales; (3) that Stewart kept his drugs in a shoe box within the week of his arrest; (4) Stewart's pricing schedule for his drug transactions; and (5) how Stewart was "fronted" the methamphetamine found in his car the day of his arrest. *See id.* at 3-30. These will be referred to hereinafter as the "proffer statements."

- 8 -

concluding that the information contained within each of the warrants was not stale and established sufficient probable cause. *See* N.T. Pre-Trial Motions Hearing, 7/10/24, at 85. In addition, Judge Liller granted the Commonwealth's motion to admit Stewart's proffer statement,[10] given that it only related to "conduct in the case at bar."[11] *Id.* at 82-83.[12]

Stewart was tried before a jury from January 6-8, 2024, after which the jury found Stewart guilty on all charges. On February 27, 2025, Stewart was sentenced to an aggregate term of 5-10 years' imprisonment in a state correctional facility. On March 6, 2025, Stewart filed a motion for reconsideration of sentence, which was subsequently denied. Stewart filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained on appeal. Stewart presents the following two issues for our consideration:

_____

[10] The court also granted the Commonwealth's motion to admit prior acts evidence from Controlled Buy 2. However, this fact is irrelevant for purposes of appeal because Stewart did not properly preserve this claim for our consideration. *See infra* n.13.

[11] Judge Liller later clarified what was not considered "conduct in the case at bar" as follows: "So[,] nothing about the [proffer] statements that Mr. Stewart had made regarding his cooperation, and the statements he made pursuant to that cooperation with regard to any other drug deals or drug deliveries that he was not involved in." N.T. Pre-Trial Motions Hearing, 7/10/24, at 82-83.

[12] Following the pre-trial motions' hearing, Attorney Brittenburg withdrew from representing Stewart, and the trial court appointed a public defender, John Uetz, Esquire, to represent Stewart.

(1) Did the trial court err in denying suppression of evidence obtained as a result of search warrant CS-3 where the affidavit failed to establish probable cause to believe evidence would be found in the Honda Pilot?

(2) Did the trial court err in granting the Commonwealth's motion to admit other acts[,] pursuant to Pa.R.E. 404(b), where the probative value of the evidence did not outweigh the potential for unfair prejudice, especially in light of the trial court's failure to provide a cautionary instruction to the jury explaining the limited purpose of the evidence?

Appellant's Brief, at 5.

Stewart first argues that the affidavit used to secure the warrant to search his car was not supported by probable cause because "[n]o information was included regarding the likelihood or frequency of future prearranged deliveries, [n]or [did it contain information] indicating [continuous,] unlawful activity[,] specifically with respect to the Honda Pilot [,] up to the time of the request for the warrant." *Id.* at 15. Moreover, Stewart contends that, because "the only time contraband was expected to be found in the Honda Pilot was when law enforcement scheduled a prearranged controlled purchase," the affidavit lacked a "fair probability" that there would be evidence of a crime in the vehicle at the time the warrant was issued. *Id.*

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The

suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citations and paragraph break omitted). "A search warrant must be supported by probable cause." U.S. Const. amend. IV; Pa. Const. art. I, § 8. "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) (citation omitted). When considering the adequacy of a search warrant, we must bear in mind the following:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in *Illinois v. Gates*, 462 U.S. 213 [] (1983), and adopted in *Commonwealth v. Gray*, [] 503 A.2d 921 ([Pa.] 1985). A magistrate is to make a practical, common[-]sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018) (footnote and some citations and quotation marks omitted). Moreover, in

analyzing whether a warrant is supported by probable cause, judicial review is limited to the four corners of the supporting affidavit. **See** Pa.R.Crim.P. 203(B).

> Under a "totality of the circumstances" test:
>
> It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
> . . .
> [Moreover,] as a reviewing court, we are not to conduct a *de novo* review of the issuing authority's probable cause determination, but are simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

***Commonwealth v. Torres***, 764 A.2d 532, 537-38, 540 (Pa. 2001) (citations omitted).

Probable cause based on a CI's tip "depends upon the informant's reliability and basis of knowledge." ***Commonwealth v. Clark***, 28 A.3d 1284, 1288 (Pa. 2011) (citation omitted). A CI's tip may constitute probable cause "where police independently corroborate the tip, [] where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity." ***Id.*** Finally, there must be a "substantial nexus" established by the affidavit of probable cause between the place or thing to be searched and the criminal activity or

contraband sought. *See Commonwealth v. Mendoza*, 287 A.3d 457, 463 (Pa. Super. 2022).

In Judge Liller's Rule 1925(a) opinion, she concluded that there was sufficient probable cause in the affidavit to secure a warrant to search Stewart's car where: the affidavit was based on the reliable and credible information provided by the CI, who had cooperated in the past, and whose information was corroborated by the Bucks County Drug Strike Force; the four corners of the affidavit established a direct nexus between Stewart's Honda Pilot and the criminal activity/contraband where, each time the CI made a controlled buy, it took place within the vehicle; Stewart made a "brief, unexplained stop," in his vehicle prior to Controlled Buy 2, most likely to "detect surveillance;" and Controlled Buy 2 occurred on April 10, 2023, and, just three days later the search warrants were applied for and executed, making the corroborated information close enough in time to establish probable cause. *See* Trial Court Opinion, 6/3/25, at 16-17.

Furthermore, an established and reliable CI participated directly in two controlled buys with Stewart. Before each purchase, Detective Naftulin searched the CI and the CI's vehicle, then supplied the CI with pre-recorded buy money. Detective Naftulin maintained continuous surveillance of the CI and Stewart throughout the controlled buy and until the CI arrived back to a neutral location. Each time the CI and Stewart met at the designated buy site, the CI would get into Stewart's vehicle to purchase the contraband. Under

the totality of the circumstances—direct police observation, continuous surveillance, police overhearing Stewart's communications with the CI, Stewart's similar sales routine, and Detective Naftulin's surveillance check before Controlled Buy 2—there was probable cause to believe that drugs would be found in Stewart's blue Honda Pilot. **Cf. Commonwealth v. Flaherty**, 583 A.2d 1175 (holding search warrant for defendant's car not supported by probable cause because only "nexus" connecting vehicle to illicit drug behavior was statement overheard by CI). **Torres**, **supra**. Based upon the record, and, in particular, the facts contained within the affidavit of probable cause, we agree with the trial court's conclusion that there was sufficient information to prove a nexus between drugs and/or contraband and Stewart's blue Honda Pilot.

In his second issue, Stewart contends that the trial court erred in allowing the Commonwealth to admit "other acts" evidence via his proffer statements pursuant to Rule 404(b)—specifically, evidence regarding Controlled Buy 2, what he would do with proceeds of drug transactions, how he would package drugs, and the pricing schedule he would use for drug transactions. **See** Appellant's Brief, at 27. Particularly, Stewart argues that admitting this other acts evidence was more prejudicial than probative,

- 14 -

especially because the trial court failed to provide a cautionary instruction to the jury explaining the proposed purpose of the evidence. ***Id.***[13]

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If[,] in reaching a conclusion[,] the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted).

---

[13] It should be noted that Stewart's trial counsel never requested a cautionary instruction during trial, and the trial court did not address this issue in its Rule 1925(a) opinion. The lack of a cautionary instruction was also not included as an issue in Stewart's Rule 1925(b) statement. Thus, we find the issue waived on appeal. ***See*** Pa.R.A.P. 302(a), (b); Pa.R.Crim.P. 647(C); Pa.R.A.P. 1925(b)(4)(vii).

Additionally, while Stewart separates "evidence from Controlled Buy 2" from the proffer statements in his argument, these two pieces of evidence are intertwined, as the proffer statement includes instances where Stewart discusses his involvement in Controlled Buy 2 and his arrest. ***See*** Commonwealth Exhibit 18 (Audio Recording of Proffer Statement), 5/18/23, at 1:05:23-1:06:20 (Stewart stating he kept drugs in shoe box "the week" of his arrest). The only evidence that Stewart objected to at trial, however, was statements made during the proffer; his attorney never contested any separate testimony regarding Controlled Buy 2 or the arrest. ***See*** N.T. Jury Trial, 1/7/25, at 3-4. Thus, because the proffer statements are the only pieces of evidence Stewart contested at trial, and the only evidence raised in his Rule 1925(b) statement, we are confined to reviewing only those statements as the possible impermissible pieces of Rule 404(b) evidence. ***See*** Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii).

"[R]elevance is the threshold for admissibility of evidence." ***Commonwealth v. Green***, 271 A.3d 393, 401 (Pa. Super. 2021) (citation omitted). "The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice." Pa.R.E. 403. "Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. That being said,

> [e]vidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged.

***Green***, 271 A.2d at 402 (internal citation omitted). The following factors shall be considered in determining whether the prejudicial effect of certain evidence outweighs its probative value: the strength of the evidence as to the commission of the other crime; the similarities between the crimes; the interval of time that has elapsed between the crimes; the need for the evidence; the efficacy of alternative proof; and the degree to which the evidence probably will rouse the jury to overmastering hostility. ***Commonwealth v. Page***, 965 A.2d 1212, 1221 (Pa. Super. 2009) (citation omitted). Rule 403 analyses typically are conducted on evidence at trial rather than during pre-trial motions. ***See Commonwealth v. Hicks***, 91 A.3d 47, 55 (Pa. 2014) (holding Rule 403 balancing test "should generally be deferred" until there is record developed at trial).

- 16 -

Further, Pennsylvania Rule of Evidence 404(b) states:

(b) Other Crimes, Wrongs, or Acts.

**(1) *Prohibited Uses.*** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) *Permitted Uses.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2). The list of "permitted uses" in Rule 404(b)(2) is not exhaustive. Our Supreme Court has recognized a *res gestae* exception to otherwise prohibited evidence when it is "relevant to furnish the context or complete story of the events surrounding a crime." ***Commonwealth v. Dillon***, 925 A.2d 131, 137 (Pa. 2007).

Our Courts also recognize that statements made by a defendant in furtherance of a proffer ordinarily are not admissible during trial if the proffer fails. ***See Commonwealth v. Widmer***, 120 A.3d 1023, 1026 (Pa. Super. 2015). However, where a defendant knowingly and voluntarily waives his rights, our Courts have held that statements made during the proffer can be used against the defendant. ***See id.*** at 1027, 1028; ***see also Commonwealth v. Byrne***. 833 A.2d 729, 735 (Pa. Super. 2003) ("[A] defendant is permitted to waive valuable rights in exchange for important concessions by the Commonwealth[.]") (internal citation omitted).

Instantly, the trial judge admitted Stewart's prior bad acts evidence after concluding that the potential prejudice did not outweigh the probative value of the evidence because "the evidence was relevant and detailed law enforcement's thorough involvement in the investigation, as well as went to any issue of lack of mistake and knowledge by [Stewart]." Trial Court Opinion, 6/3/25, at 21.[14] Notwithstanding the fact that Stewart waived the issue of the lack of a cautionary instruction being given to the jury, **see supra** at n.13, the Commonwealth's other acts evidence of Stewart's proffer statements were still properly admitted as *res gestae* evidence because, as the trial court concluded, their probative value outweighed their prejudicial effect.

In **Commonwealth v. Knupp**, 290 A.3d 759, 773 (Pa. Super. 2023), we upheld a trial court's admission of Rule 404(b)(2) *res gestae* evidence where the admitted evidence consisted of statements concerning controlled purchases. There, the defendant was convicted of the same charges that Stewart faced here—possession with intent to deliver, possession of a

_____

[14] In Stewart's Reply Brief, he correctly asserts that the Commonwealth is not entitled to use "all relevant statements that [Stewart] made in connection with the [proffer] agreement." Appellant's Reply Brief, at 5. Each individual proffer statement, just like any other piece of evidence, is subject to a Rule 403 balancing analysis where the trial judge must weigh the prejudicial effect of the statements against their probative value. **See Rettger v. UPMC Shadyside**, 991 A.2d 915, 925 (Pa. Super. 2010) (explaining trial court vested with authority to determine admissibility of evidence). As demonstrated **infra**, the trial court properly conducted this analysis on each statement the Commonwealth attempted to admit, so there is no issue as to the "blanket" admissibility of the proffer statements. **See** N.T. Jury Trial, 1/7/25, at 6, 9, 13, 19, 29.

controlled substance, and possession of drug paraphernalia. *Id.* at 762. Similarly, in *Knupp*, the trial court admitted evidence concerning the three controlled purchases that took place using pre-recorded buy money prior to the defendant's arrest. *Id.* at 770. The defendant contested the evidence's admissibility on appeal, asserting that it was more prejudicial than probative and used for improper purposes under Rule 404(b). *Id.* We held that the trial court did not abuse its discretion in finding that the evidence's probative value outweighed its prejudicial effect. *Id.* at 772. While the *Knupp* Court said that the use of a cautionary instruction helped ameliorate the prejudice associated with the evidence, the court's reasoning focused mostly on the evidence's limited use and its probative value:

> The controlled purchases admitted at trial were relevant to establish the history and natural development of the facts. They formed an integral part of the criminal investigation because they provided the evidentiary basis for the car stop of [defendant] and the police referred to them in the affidavits of probable cause for the search warrants for [defendant]'s barbershop and his banking record[s]. Evidence of these purchases informed the jury about the course of the investigation that resulted in [defendant]'s arrest and thus were properly admitted under the *res gestae* exception to the general prohibition on admitting prior bad acts evidence.
>
> . . .
>
> Moreover, the evidence was admissible under Rule 404(b) where the controlled buys were closely linked temporally, in the days prior to the car stop and within an overall period of time of less than sixty days prior to the search warrant executions, and geographically, where the evidence suggested that [defendant]'s barbershop was being used as a site for drug sales.

- 19 -

. . .

> The use of the limiting instruction, **along with the initial limitation that only evidence concerning the recovered controlled buy money would be admitted**, leads us to the conclusion that [defendant] was not unfairly prejudiced by the partial grant of the Commonwealth's motion in *limine* and the trial court did not abuse its discretion by admitting the evidence of the three controlled drug sales.

*Id.* at 772-73 (internal citations omitted) (emphasis added).

Here, Judge Liller, after hearing argument from both parties, ruled at the pre-trial hearing that the prior act evidence was admissible, both as to the proffer statements and as to Controlled Buy 2. *See* N.T. Pre-Trial Motions, 7/10/24 Hearing, at 82-83. Later, at trial, Judge Liller clarified her ruling on the admissibility of the proffer statements, going through all the contested admissions[15] and ensuring that each one was closely tailored to the specific instances of Controlled Buy 2 and Stewart's subsequent arrest. *See* N.T. Jury Trial, 1/7/25, at 6, 9, 13, 19, 29. In particular, the judge found the statement that Stewart intended to repackage the drugs found during his arrest in the same way he did for Controlled Buy 2 would help the jury understand the thorough criminal investigation that took place and was probative where Controlled Buy 2 and the arrest were "closely linked temporally." *See id.* at 8; *Knupp*, 290 A.3d at 772-73. Additionally, the statement that Stewart "kept methamphetamine in a shoebox that week" went towards the investigation

_____

[15] *See supra* n.9.

and temporal link as well, and was tailored by the trial court to omit the phrase "as recently as," which would have suggested Appellant had done something like this before. *See* N.T. Jury Trial, 1/7/25, at 13-14.

Moreover, Stewart's statement that he had a plan for the proceeds of his drug dealing is probative of his intent to sell the contraband recovered on the day of his arrest, an essential element to one of his charges. *See id.* at 8-10. That Stewart had a "pricing schedule" also goes towards this intent, and the court was careful to limit this statement so that it did not include any prices or temporally related words, mitigating any prejudice. *See id.* at 18-19. Finally, the statement that the methamphetamine was "fronted" to Stewart is probative of how it came into his possession and was also tailored to only refer to the contraband recovered during Controlled Buy 2 and the drugs found in his vehicle. *See id.* at 29.

Here, where almost all these challenged statements were edited by Judge Liller to make them less prejudicial, we conclude that the trial court did not abuse its discretion in finding the prior acts more probative than prejudicial. *See id.* at 8, 13-14, 24. Therefore, where the court did not abuse its discretion in admitting Stewart's Rule 404(b) evidence because its probative value was not outweighed by its prejudicial effect, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/31/2026